FRANK R. ARNOLD, Appellee, v. FORT DODGE, DES MOINES & SOUTHERN RAILROAD COMPANY, Appellant.

NEGLIGENCE: Proximate Cause—Insufficient Equipment of Street
1 Cars. Evidence reviewed, in an action for injuries to a pedestrian who was run over after he fell in front of a street car, and held sufficient to sustain a finding that the failure to have the car equipped with an appropriate fender, and with an appliance for the use of sand, was the proximate cause of his injuries.

APPEAL AND ERROR: Review—Harmless Error—Repetition of
2 Instructions. In an action for injuries to a pedestrian who was run over by a street car, the trial court, after giving an instruction upon the subject of equipping cars with fender and with sand, thereafter gave two instructions requested by the plaintiff on the same matters, which were a substantial repetition of each other, and also of the instructions already given; but such repetition, while fairly subject to criticism, *held* harmless error, where the subjects were controlling, and the evidence relating thereto was undisputed, and the jury could not ignore them without violating the instructions given on the court's own motion.

TRIAL: Instructions—Form and Language in General—Last Clear
3 Chance. An instruction in an action for injuries to a pedestrian run over by a street car, where the doctrine of last clear chance was made to rest, not upon the actual knowledge of the plaintiff's danger, but upon the question whether the motorman, as a reasonably prudent man, ought to have discovered his danger, was erroneous.

**APPEAL -AND ERROR:** Review—Harmless Error—Statement of Doctrine of Last Clear Chance. In an action for injuries to a pedestrian run over by a street car, where the last clear chance doctrine was set forth as an avoidance of the contributory negligence of the plaintiff, and was erroneously stated, in that it was made to rest, not upon the actual knowledge of the plaintiff's danger, but upon the question whether, as a reasonably prudent man, the motorman ought to have discovered plaintiff's danger, it was harmless error, where there was no contributory negligence on the part of the plaintiff in the case.

**TRIAL:** Instructions—Applicability—Instruction without Support in Evidence. In an action for injuries to a pedestrian run over by a street car, the submission of the last clear chance doctrine, when there was no evidence upon which it should have been submitted, was not prejudicial to the defendant, and its only effect could be the assumption of the jury that the plaintiff might be found guilty of contributory negligence.

**TRIAL:** Evidence—Privileged Communications—Non-Waiver by Cross-Examination. The privilege of objecting to the testimony of a physician is not waived by the plaintiff by his testimony on cross-examination, such cross-examination not being deemed voluntary.

**WITNESSES:** Competency—Privileged Communications. Testimony of a physician as to a conversation had with the patient after the professional relation had ceased is not privileged, and is admissible.

**APPEAL AND ERROR:** Review—Harmless Error—Failure to Show Answer Sought. Where the record does not disclose what the testimony of the witness would have been, had it not been for a ruling sustaining an erroneous objection, there is no reversible error.

**APPEAL AND ERROR:** Modification—Curing Error by Remittitur. While it was error to allow plaintiff, by an instruction, to recover, as reasonable medical expenses, a hospital bill and costs of an artificial limb, where there was no attempt to show that the amounts testified to represented reasonable value, or that the plaintiff had in fact paid such sums, plaintiff will, on appeal, be allowed to cure such error by remitting the amounts of such items.

*Appeal from Story District Court.—*R. M. WRIGHT, Judge.

JULY 1, 1919.

ACTION for damages for personal injuries. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed on condition.*

*E. H. Addison, S. R. Dyer, J. W. Jordan,* and *W. R. Dyer,* for appellant.

*C. G. Lee, I. R. Meltzer, T. G. Garfield,* and *C. W. Garfield,* for appellee.

EVANS, J.—I. The defendant company operated a street car line in the city of Ames, wherein the accident under consideration happened. In an attempt to avoid a reckless automobile, the plaintiff fell upon the street car track, in front of an on-coming car. Before he could remove himself, the car had run over his foot and crushed the same so as to necessitate amputation of the leg above the ankle. The car was running west along Main Street, the track being upon the center line. Arnold, the plaintiff, being on the south side of the street, started to cross to the other side. He was at a point not an intersection. When he came within about six feet of the south rail, he stopped, for the purpose of allowing the car to pass, before attempting to cross the track. While in this position, and before the car had passed, a reckless automobile driver suddenly appeared to the east of him, coming west. This auto had suddenly crossed the track from the north side to the south side behind the car, and had then turned west on the south side, being the wrong side. Going at 30 miles an hour, it passed the street car before reaching the place where plaintiff stood. In order to avoid a collision with the automobile, the plaintiff was compelled to jump toward the track. In so doing, he fell, so that his body was partly upon the track. At this moment, according to his testimony, the car was only 6 or 8 feet away from him. He attempted to remove

himself, but before he could do so, the car had passed over his foot. The evidence shows the car to have been moving at from 6 to 10 miles an hour. The front wheel of the car was 9 feet from the front end. The proximity of the car was such, at the moment when the plaintiff was first exposed to peril, that the highest degree of diligence on the part of the motorman to stop the car could hardly be expected to avoid a collision. The injury to plaintiff occurred within a mere second or two from the moment of his exposure to peril. The plaintiff alleged three specifications of negligence on the part of the defendant, as follows:

(1) That its car was not equipped with fenders.

(2) That it was not equipped with sand.

(3) That the motorman failed to keep a proper lookout, and thereby failed to discover the plaintiff's peril.

There was evidence introduced, tending to support each specification. As to the failure to keep a proper lookout, we are not favorably impressed with the evidence. We think that the substance of plaintiff's case must be found, if at all, in the first two specifications. The appellant contends strongly that there was no competent evidence to show that the use of fenders upon street cars is usual, or that the absence thereof was negligent or unusual. The same point is urged as to the alleged omission of sand from the equipment. The subject of the use of such equipment upon street cars is not an unfamiliar one, even to nonexperts. It has been held that the courts may take judicial notice even of the custom to use such equipment upon street cars. *Love v. Detroit, J. & C. R. Co.*, 170 Mich. 1 (135 N. W. 963). As to the function of a fender, considerable testimony appears in the record. One of defendant's expert witnesses testified as follows:

"The purpose of a fender is to prevent people falling in front of the car from going under the wheels. I sup-

1. Negligence: proximate cause: insufficient equipment of street cars.

pose that is to catch a person, or to give them something to catch hold of. It is close up to the front of the car, which otherwise would grab a person or animal falling in front of it. The fender can carry a person along, brush him aside, or they may roll under. I suppose if the fenders are properly adjusted, the person could not go under."

Another testified:

"There are such fenders that the motorman can adjust from his post, and drop the fender upon the track. Their normal place is high, and they are tripped automatically by the motorman and dropped upon the ground. One purpose of the fender is that, if a man should fall across the track in the region of the fenders, he would fall upon the fender, and it would catch him. Another purpose is that, if he was simply slipping, with his leg in a half-suspended posture, the rib of the fender would catch him, and prevent him from going under the car. That is another function of it. Another function is, if a man should go to fall on the track, he could catch hold of the fender and drag himself along so as to avoid injury until the motorman stopped the car. That is one of the purposes of the fender, and it is possible for a man to avoid injury in that way. Q. Supposing a person fell absolutely flat across the track? A. The ordinary adjustment of 6 to 8 inches with a light car under these conditions would usually bring the fender to a position where it would catch a child or anyone lying flat across the track. The primary object of the fender is not alone to pick objects off the track. It is to give such support to persons that may fall toward the car as will give them an opportunity to catch hold of, if you should run into people who would otherwise be thrown on the track and run over,—to give them something to fall on or fall toward; but I could not testify that the prime object of any fender, automatic or otherwise, is to actually drop and scoop objects from the track, though that is sec-

ondary object of some types of fenders of the automatic type. Q. Would you, as an expert street car man, say that, if a man fell upon the track, the fender would pass over him and permit the wheels to grind him up, that that fender was adjusted too high? A. No, I wouldn't make any such statement. I would say * * *."

Another testified:

"Some cars have the additional fender, which is a framework in front of the wheels clear back to the front of the wheels, when a fender is on. It would protect them in case the fender didn't hit. The fenders project over the rail, and a person approaching in front of the car and by the side of the fender could not slip under the wheel very easy. The shield would ward him off. I presume if he fell, and fell upon the shield, it would catch him."

There were no fenders upon the defendant's car. There was an equipment thereon for the use of sand. This equipment was out of repair as to one end, and was not in use. This was the front end of the car, on the occasion under consideration. The jury was justified, from the foregoing testimony, in finding that, if this car had been equipped with an appropriate fender, it would probably have prevented the plaintiff from coming under the wheels, even though it might not have wholly protected him from injury. Though the plaintiff testified that the car was within 6 or 8 feet of him at the time of his falling, some of the defendant's witnesses put the distance as short as 4 feet. At this latter distance, the plaintiff would have fallen upon the fender, if fender there had been. Manifestly, if the fender were effective only to delay for a few seconds the coming under the wheels, it would afford the opportunity for the motorman to bring his car to a stop.

Concededly, the use of sand would shorten the distance within which the car could be brought to a stop. That it is customary to carry sand within proper equipment for

use in just such an emergency, is not denied. Assuming, therefore, that there had been a suitable fender upon the car, and that the sand equipment was in working order, and that the motorman was maintaining a proper lookout, this was a sufficient basis for a finding by the jury that the culminating injury would not have happened to the plaintiff, and that, therefore, the failure of this equipment was, in that sense, the proximate cause of the injury. Such finding, upon this record, cannot be deemed as mere speculation or conjecture.

Doubtless it is not quite accurate to say that the specifications of the petition herein can be deemed as separate or independent negligences. The absence of fenders was the predominating one, and the others were incidental thereto. If there had been a proper equipment of fenders, and if, notwithstanding that fact, the plaintiff had been injured by collision with the fender, there would be great force in a contention that the highest diligence of lookout or of the use of sand could not have prevented the collision in the mere second of time which intervened. On the other hand, if, notwithstanding the collision, the fenders should, nevertheless, be effective in delaying serious injury, by pushing the fallen person along the track or away therefrom, then the diligent use of all means for a quick stop would be of great importance. In this case, the absence of fender and of sand is conceded, so that we have no occasion to consider whether a verdict for the plaintiff could have been predicated on one alone. Our conclusion at this point disposes of a large majority of grounds relied on for reversal, the plaintiff's brief being largely concentrated upon this feature of the case.

II. Complaint is made of many of the instructions. So far as the instructions are consonant with the conclusions above announced, we will not discuss them herein.

Complaint is made because undue emphasis was placed upon the subject of fenders and sand, in the instructions of the court. The trial judge, on his own motion, gave an appropriate instruction on the subject. Thereafter, he gave two instructions requested by the plaintiff on the same subject. These two were a substantial repetition of each other, and both were a repetition of an instruction already given. Such repetition is fairly subject to criticism, and might easily become a fair ground of reversal. In this case, the subjects were themselves quite controlling, and the evidence relating thereto was undisputed. The jury could not ignore them, without violating the instructions given on the court's own motion. Without approving the repetition complained of, we think that, upon this record, it was wholly without prejudice to the defendant.

2. APPEAL AND ERROR: review: harmless error: repetition of instructions.

III. Appellant complains of Instruction No. 16, given by the trial court. This instruction purported to submit to the jury the doctrine of so-called last clear chance. It was necessarily predicated upon the assumption of contributory negligence by plaintiff, and it set forth the last clear chance doctrine as an avoidance of such contributory negligence. It is urged by appellant that the doctrine was erroneously stated, in that it was made to rest, not upon the actual knowledge by the motorman of plaintiff's danger, but upon the question whether, as a reasonably prudent man, he ought to have discovered this danger. That the instruction is erroneous in this respect must be conceded. It appears, however, by the concession of both parties that there was no contributory negligence on the part of the plaintiff. The doctrine of last clear chance was, therefore, inapplicable. It is further urged by appellant that the instruction was

3. TRIAL: instructions: form and language in general: last clear chance.

4. APPEAL AND ERROR: review: harmless error: statement of doctrine of last clear chance.

further objectionable in that it submitted an issue or question upon which there was no evidence. And this must be conceded. The only prejudice, however, that could arise out of the instruction was the assumption therein that the plaintiff might be found guilty of contributory negligence. This was prejudicial to the plaintiff, and not to the defendant. Notwithstanding the error, therefore, in the instruction, we are satisfied that it, also, was without prejudice to the defendant.

5. TRIAL: instructions: applicability: instruction without support in evidence.

IV. The defendant examined Dr. Stanger as a witness. Dr. Stanger aided Dr. Bush in the treatment of the plaintiff at the hospital, immediately after his injury. The defendant propounded to the witness certain questions as to what the plaintiff had told him as to the circumstances of the accident. This line of examination was objected to on the ground of privilege under the statute, Dr. Stanger being deemed to occupy at the time the relation of physician to the plaintiff as his patient. This objection was properly sustained. The privilege was not waived by the plaintiff by his testimony on cross-examination. Testimony thus given by the plaintiff on cross-examination is not deemed voluntary, and is, therefore, not a waiver. *Lauer v. Banning,* 140 Iowa 319. Thereupon, inquiry was made of the witness as to conversation had with the plaintiff after the professional relation had ceased. Objection was made to this line of examination, on the same ground as before. This objection was also sustained. This latter ruling cannot be approved. The defendant had a right to inquire into conversations had after the termination of the professional relation. These, in the statutory sense, were not confidential. The record,

6. TRIAL: evidence: privileged communications: nonwaiver by cross-examination.

7. WITNESSES: competency: privileged communications.

however, does not disclose in any way what

8. APPEAL AND ERROR: review: harmless error: failure to show answer sought.
the testimony of the witness would have been if the questions had been permitted. The error, therefore, is not a reversible one. *Arnold v. Livingstone,* 155 Iowa 601.

V. The plaintiff was permitted by the instructions to recover his reasonable medical expense. The only testimony in the record on this subject is as follows: "Hospital bill about $200; artificial limb $100; besides my

9. APPEAL AND ERROR: modification: curing error by remittitur.
car fare and expenses." There was no attempt to show, either that these amounts represented reasonable value, or that plaintiff had, in fact, paid such sums. In directing attention to the state of the record on this point, counsel for appellant make the professional statement that the hospital bill was not paid by the plaintiff, but was paid by the defendant. We cannot treat this statement of counsel as a part of the record, but we can permit it to stimulate our examination of the record as it is. If the plaintiff had, in fact, paid these specified amounts, we should deem that fact presumptively sufficient. Dr. Bush, the plaintiff's physician, was one of his witnesses. He could have testified to the reasonable value of the services, and to the fact that the amount had or had not been paid by the plaintiff. Plaintiff himself could have testified to the latter fact. We are disposed to avoid undue technicality as to the method of proof upon such a question. *Reutkemeier v. Nolte,* 179 Iowa 342. But we think it would be undue liberality to permit items of this kind to be thrown into the record for the consideration of the jury, without any semblance of evidence of their correctness. And this is especially so where the record discloses that the evidence was readily available to the plaintiff, by the actual presence of the necessary witnesses at the trial. We think, therefore, that there was

error at this point. Plaintiff may have the election to cure the same by remitting the amount of these two items.

The foregoing deals with the more important questions presented in the record. The case has been diligently argued, and the briefs are voluminous. Forty-eight errors and twenty-seven brief points are presented. They are substantially all reducible, however, to the questions which we have here considered. It is not practicable that we deal with them in greater detail. If the plaintiff elect to remit the items specified in the last division hereof, the judgment below will be affirmed; otherwise, reversed and remanded. —*Affirmed on condition.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.