Raymond C. PEXA, Appellant,

v.

AUTO OWNERS INSURANCE
COMPANY, Appellee.

No. 03–1308.

Supreme Court of Iowa.

Sept. 1, 2004.

Frederick G. White, Waterloo, and Wallace D. Parrish, Waterloo, for appellant.

Timothy W. Hamann of Clark, Butler, Walsh & Hamann, Waterloo, for appellee.

TERNUS, Justice.

The plaintiff, Raymond Pexa, sued the appellant, Auto Owners Insurance Company, for underinsured motorist benefits. After the jury returned a verdict finding Pexa's damages to be less than the amount previously paid by the underinsured tortfeasor, the district court entered judgment in favor of the defendant. Pexa appeals, claiming error in various evidentiary rulings made by the district court, error in the court's instructions to the jury, and error in the trial court's denial of Pexa's motion for new trial. We affirm.

I. *Background Facts and Proceedings.*

The plaintiff was injured in an automobile accident with an intoxicated driver on August 17, 1999. The other driver, Michael Wilson, was at fault. After the collision, Pexa had to be extricated from his vehicle; he was then transported to the hospital. When he was seen in the emergency room, the plaintiff, who was seventy-seven years old, was somewhat confused and was observed to have bruises on his forehead and a small laceration on his nose. Subsequent tests revealed Pexa had a nondisplaced pelvic fracture, which was treated with pain medication. Due to the plaintiff's hypotension, he was initially admitted to the intensive care unit. Additional tests were conducted to rule out any internal bleeding. Six days later his condition had stabilized and he was transferred to the skilled nursing facility for physical therapy and further monitoring. He had quite a lot of pain at first and was slow in regaining his strength. Pexa was eventually discharged on September 21, 1999, using a cane. In all, he spent thirty-four days in the hospital.

Pexa's medical bills totaled $41,544, which were satisfied by his health insurer and Medicare benefits. The actual amount paid by the insurer and the Medicare pro-

gram, however, was only $15,950.29, due to contractual agreements between the payors and the medical care providers. The difference between the billed amount and the amount paid was written off by the hospital and other providers.

Pexa settled his personal injury claim against Wilson for the limits of Wilson's liability coverage, $100,000. Pexa's automobile insurer, Auto Owners, consented to the settlement.

Pexa then brought the present action against Auto Owners to recover benefits under his underinsured motorist (UIM) coverage. This coverage, which carried a $100,000 limit, provided:

> We will pay compensatory damages any person is legally entitled to recover from the owner or operator of an **underinsured automobile** because of **bodily injury** sustained when occupying or getting into or out of an **automobile** that is covered by **SECTION II—LIABILITY COVERAGE** of the policy.

The policy limited recovery under the UIM coverage for any one occurrence to

> [t]he amount of compensatory damages because of or arising out of **bodily injury** to such injured person that are not recovered from the liability bond(s) or insurance policy(s) applying to the owner and operator of the **underinsured automobile** because such bond(s) or policy(s) has been exhausted by the payment of judgments or settlements.

There was no dispute between the parties that pursuant to these contractual provisions, Auto Owners was obligated to pay Pexa the amount of compensatory damages Pexa was legally entitled to recover from the tortfeasor, but only to the extent those damages exceeded the $100,000 settlement already paid by the tortfeasor's liability insurer and subject to Auto Owner's policy limit of $100,000. Although Auto Owners admitted the tortfeasor's lia-

bility for the accident, it contended Pexa was not entitled to any UIM benefits because (1) Pexa's damages did not exceed $100,000, and (2) not all of Pexa's alleged damages were proximately caused by the August 1999 accident.

In response to motions in limine filed by the parties, the district court made several pretrial evidentiary rulings. The court partially sustained the defendant's motions in limine and excluded any evidence of (1) the amount or type of insurance coverage provided by Auto Owners to Pexa, (2) the details of Pexa's settlement with the underinsured motorist, and (3) the tortfeasor's intoxication. The court also addressed Auto Owner's motion to prohibit evidence of the dollar amount of medical expenses billed by the health care providers. Rejecting this request, the court ruled the amount of the medical bills could be disclosed to the jury, but the plaintiff's recovery for medical expenses would be limited to the amount actually paid to the providers. The court also denied a motion in limine filed by Pexa, who sought to exclude any evidence of his history of prostate and bladder cancer.

The case proceeded to trial before a jury. Both parties made appropriate objections and offers of proof to preserve the issues raised in the motions in limine. The trial court did not alter its previous rulings. Prior to submitting the case to the jury, the court rejected the plaintiff's requested instructions that would have informed the jury that the plaintiff sought to recover UIM benefits in excess of the amount paid by the underinsured motorist, that the sum paid by the underinsured motorist would be deducted from the jury's verdict, and that the limit of the plaintiff's UIM coverage was $100,000.

The case was submitted to the jury on a special verdict form that required the jury

to make two factual findings. *See* Iowa R. Civ. P. 1.933 (providing for submission on special verdict). First, the jury was asked whether "the plaintiff proved damages proximately caused by the accident of August 17, 1999," to which it answered "yes." Then the jury was asked to state the amount of such damages in five separate categories. The court had previously entered the sum of $15,950.39 on the line provided for past medical expenses. The jury completed the remainder of the special verdict, awarding $12,300 for past loss of use of body, $12,300 for past pain and suffering, nothing for future loss of use of body, and nothing for future pain and suffering. (Pexa did not claim future medical care, so this item of damage was not submitted to the jury.) The sums entered for each item of damage added up to $40,550.39. Based on these factual findings, the court then determined that Pexa was not entitled to recover under the UIM coverage of his policy and, accordingly, entered judgment in favor of Auto Owners.

After Pexa's posttrial motions were overruled, he filed this appeal. Pexa claims reversible error in several particulars: (1) the court erred in limiting his maximum recovery for medical expenses to the amount actually paid for medical care; (2) the court abused its discretion in admitting evidence of the plaintiff's cancer-related health problems; (3) the court abused its discretion in refusing to allow evidence that the tortfeasor was intoxicated at the time of the accident; (4) the court abused its discretion in refusing to allow evidence of the underlying insurance contract, including the amount of UIM coverage and the fact the sum previously paid by the tortfeasor would be deducted from the amount of damages found by the jury; and (5) the court abused its discretion in failing to grant a new trial based upon the evidentiary and instructional errors noted and the inadequacy of the damages found by the jury. We separately address each issue.

## II. *Recovery of Medical Expenses.*

The district court made a pretrial ruling that Pexa's recovery for his past medical expenses would be limited to the amount paid to his health care providers. The court stated, however, that the plaintiff could still introduce evidence of the billed amount because this figure was probative of the extent of his injuries. (Auto Owners had agreed the jury would not be told that Pexa's health insurer and Medicare had paid for his medical care.) In line with the court's pretrial ruling, the jury was instructed that in determining the amount of Pexa's damages, it should consider, among other items,

> [t]he reasonable value of necessary hospital charges, doctor charges and prescriptions from the date of injury to the present time. It is stipulated that the total amount of these bills is $41,544.34 and that, due to adjustments, the amount the plaintiff may recover for this item is $15,950.39.

In addition, the court entered the figure of $15,950.39 on the special verdict form in the blank provided for past medical expense.

The plaintiff claims the court erred in limiting his recovery to the amount paid for medical services rendered to him and in instructing the jury accordingly. Whether a plaintiff may recover more than the amount actually paid for medical care is a legal question. Therefore, we review the court's ruling for correction of errors of law. *See In re Marriage of Wagner,* 604 N.W.2d 605, 608 (Iowa 2000) (reviewing ruling based on legal question for correction of errors of law).

We first address the plaintiff's contention that the court's instruction violated

Iowa's collateral source rule. The collateral source rule is a common law rule of evidence that bars evidence of compensation received by an injured party from a collateral source. *Schonberger v. Roberts,* 456 N.W.2d 201, 202 (Iowa 1990). The rule prevents the jury from reducing the tortfeasor's obligation to make full restitution for the injuries caused by the tortfeasor's negligence. *Id.* Although this rule has been modified by statute, *see* Iowa Code § 668.14 (1999), it continues to preclude evidence of payments made pursuant to any federal program for an injured person's actual economic losses, *see id.* § 668.14(1).

We do not think this rule is implicated in the present case because the court did not reduce the plaintiff's recovery by the amounts paid by a collateral source; rather, the court limited the plaintiff's recovery to those amounts. A proper calculation of the plaintiff's medical expenses must precede a determination of their recoverability; only the latter issue implicates the collateral source rule. Thus, the pertinent question here is not whether there has been an inappropriate offset to the plaintiff's economic loss, but instead whether the court's rulings and instructions improperly limited the evidence and incorrectly calculated that loss. To answer this question, we must consider the rules governing the measurement and proof of an injured person's medical expenses.[1]

An injured plaintiff may recover only the reasonable and necessary costs of medical care. *See Stanley v. State,* 197 N.W.2d 599, 606 (Iowa 1972). Therefore, the plaintiff has the burden to prove the reasonable value of the services rendered.

*See id.; Ege v. Born,* 212 Iowa 1138, 1153, 236 N.W. 75, 82 (1931). The reasonable value of medical services can be shown by evidence of the amount paid for such services or through the testimony of a qualified expert witness. *Stanley,* 197 N.W.2d at 606; *Arnold v. Ft. Dodge, Des Moines & S. R.R.,* 186 Iowa 538, 547, 173 N.W. 252, 255 (1919). The amount charged, standing alone, is not evidence of the reasonable and fair value of the services rendered. *Stanley,* 197 N.W.2d at 606–07; *Arnold,* 186 Iowa at 547, 173 N.W. at 255. The billed amount is relevant only if that figure was paid or an expert witness has testified to the reasonableness of the charges. *Arnold,* 186 Iowa at 547, 173 N.W. at 255. We have consistently held that evidence of the amount charged will not, in the absence of proof of the reasonableness of the billed sum, support recovery of medical expenses. *Stanley,* 197 N.W.2d at 606–07; *Ege,* 212 Iowa at 1151–52, 236 N.W. at 82; *Arnold,* 186 Iowa at 547, 173 N.W. at 255. This court has also stated that the jury is not bound by the testimony of an expert with respect to the reasonable value of medical services, but "may use and be guided by their own judgment in such matters." *Ege,* 212 Iowa at 1153, 236 N.W. at 82.

With these principles in mind, we conclude the trial court erred in limiting the plaintiff's proof of the reasonable value of his medical expenses to the amount paid to and accepted by the medical providers. Counsel for Auto Owners candidly acknowledged at oral argument that he had agreed to stipulate that a particular witness, if called at trial, would testify that the charges of the hospital and other providers were fair and reasonable. Had

---

1. Although this case arises from a contractual obligation of an insurer, the monetary aspect of the insurer's obligation, insofar as it is measured by the underinsured motorist's legal liability to the insured, is determined with reference to principles of tort law. *See Opperman v. Allied Mut. Ins. Co.,* 652 N.W.2d 139, 142 (Iowa 2002).

such testimony been permitted, the plaintiff would have provided an adequate evidentiary basis for the jury to award the billed charges to compensate Pexa for past medical expenses.

 We reject the insurer's contention that an injured party's recovery for past medical services should be limited to the amount actually paid for medical services. This position is contrary to the long-standing principle that such damages are measured by the reasonable value of medical services, and the amount paid is but one form of probative evidence on this issue. In addition, this argument fails to account for the possibility that medical charges may be compromised for reasons other than the unreasonableness of the billed amount.

 Although we conclude the trial court erred, reversal is not required unless the plaintiff was prejudiced by this error. *State v. Hartsfield,* 681 N.W.2d 626, 633 (Iowa 2004). At first blush, prejudice appears inevitable. Pexa was deprived of the opportunity to have his damages for medical care set at $41,544.34, rather than $15,950.39. Yet had he been awarded this additional sum, the total amount of his compensatory damages would still have been less than $100,000, the amount he had recovered from the tortfeasor. Thus, even under these circumstances, Pexa would not have been entitled to any UIM benefits. Therefore, he was not prejudiced by losing the opportunity to have a greater sum awarded for his medical expenses.

The plaintiff asserts another basis for prejudice, however. He claims the trial court, by limiting the amount he could recover for medical expenses, "effectively limited the potential for a much greater verdict on other items of damage." His theory is that a plaintiff's medical bills reflect the severity of the plaintiff's injuries. One flaw in this argument is that the relevant fact in the assessment of damages is the *reasonable and necessary cost* of medical care, which may or may not be the same as the medical bills. *See Stanley,* 197 N.W.2d at 606. As we discussed above, only when the charged amounts have been paid or an expert testifies they are fair and reasonable do the medical bills take on any probative value.

Due to the parties' anticipated stipulation, we can safely assume in this case that had the court not restricted the plaintiff's recovery for past medical care, there would have been expert testimony that the plaintiff's medical bills were fair and reasonable so as to support admission of the bills into evidence. Nonetheless, the jury may not have accepted the charged amounts as the reasonable value of the medical services in view of the fact the medical providers accepted a much smaller sum in satisfaction of those bills. Therefore, had the court properly submitted this issue, the plaintiff would not necessarily have been better off. In fact, we think the instruction given to the jury was actually more supportive of the plaintiff's contention that his medical expenses reflected the severe nature of his injuries than a proper submission of this issue would have been.

The jury was instructed "the total amount of [the plaintiff's medical] bills is $41,544.34 and that, due to adjustments, the amount the plaintiff may recover for this item is $15,950.39." Thus, the jury was told unequivocally that the plaintiff had medical expenses of $41,544.34. So, the plaintiff could easily have argued that his high medical expenses demonstrated how extensive his injuries were, the precise argument he claims he was deprived of making. Furthermore, the jury was *not* told the reduced sum the plaintiff was permitted to recover was the amount actu-

ally accepted by the health care providers in satisfaction of their charges. Consequently, the plaintiff was not faced with an argument that the amount charged was not the fair and reasonable cost of Pexa's medical care. In other words, Pexa had the advantage of being able to use the bills to support his other claims of damage—*unchallenged,* an advantage he would not have had if the court had properly allowed the jury to determine whether the amount charged was the fair and reasonable value of these services or the smaller sum actually paid. Under these circumstances, Pexa was not prejudiced. Therefore, the trial court's error in limiting the plaintiff's recovery for past medical care does not warrant reversal.

### III. *Evidence of Other Health Problems.*

■ Over the plaintiff's objection, the trial court permitted evidence that Pexa was diagnosed with an aggressive form of prostate cancer in 1997, two years prior to the accident, and that he subsequently underwent hormone therapy and radiation treatment. Evidence that Pexa was undergoing treatment for this condition at the time of the 1999 accident was also allowed. In addition, the court admitted evidence that Pexa was diagnosed with an aggressive form of bladder cancer two years after the accident, requiring hospitalization and surgical treatment. Pexa's treating physician was allowed to testify that several of the cancer therapies and treatments caused discomfort and had other disagreeable side effects.

Pexa objected to this evidence on the grounds of relevancy. He also argued the prejudicial effect of the evidence outweighed any probative value it might have. We review for an abuse of discretion. *Spahr v. Kriegel,* 617 N.W.2d 914, 917 (Iowa 2000).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. The plaintiff contends the cancer-related evidence was not relevant because he did not claim the 1999 accident contributed in any way to his cancer and he did not seek to recover any of the medical expenses associated with this condition. The trial court ruled the challenged evidence was probative of Pexa's damages, and we agree.

■ Pexa sought past and future damages for loss of use of body and for pain and suffering. One component of pain and suffering is loss of enjoyment of life. *See Poyzer v. McGraw,* 360 N.W.2d 748, 753 (Iowa 1985). Evidence concerning other medical conditions that have and will impact Pexa's physical and mental well-being and his ability to enjoy life are clearly relevant to the plaintiff's damage claims.

■ We also reject the plaintiff's assertion the prejudicial effect of this evidence outweighed its probative value. The trial court has discretion to exclude relevant evidence when "its probative value is substantially outweighed by the danger of *unfair* prejudice." Iowa R. Evid. 5.403 (emphasis added); *see* 2 Joseph M. McLaughlin et al., *Weinstein's Federal Evidence* § 403.04[1][a], at 403–33 (2d ed. 2004) ("Virtually all evidence is prejudicial to one party or another. To justify exclusion under Rule 403, the prejudice must be unfair.") [hereinafter *"Weinstein's Federal Evidence"*]. "Unfair prejudice arises when the evidence prompts the jury to make a decision on an improper basis, often an emotional one." *Waits v. United Fire & Cas. Co.,* 572 N.W.2d 565, 569 (Iowa 1997). The adverse effect of relevant evidence due to its probative value is

not unfair prejudice. *See* 1 John W. Strong et al., *McCormick on Evidence* § 185, at 645 (5th ed. 1999) (stating prejudice "does not simply mean damage to the opponent's cause—for that can be a sign of probative value, not prejudice," and noting prejudice arises "from facts that arouse the jury's hostility or sympathy for one side *without regard to the probative value of the evidence*" (emphasis added)).

Pexa has not identified any *unfair* prejudice resulting from the admission of evidence relating to his cancer conditions and neither have we. While this evidence is prejudicial in the sense the jury might conclude the impact of the plaintiff's accident related injuries was negligible in view of the much more serious health problems from which the plaintiff suffered, the jury's use of the evidence for this purpose is not improper or unfair. We conclude the trial court did not abuse its discretion in admitting evidence relating to the plaintiff's cancer, his treatment for this disease, and its impact on his general well-being.

## IV. *Evidence of the Tortfeasor's Intoxication.*

■ Pexa claimed at trial that after the 1999 collision, he suffered from a fear of being involved in another accident with an intoxicated driver. He asserted evidence of the tortfeasor's intoxication was relevant to this damage claim. On appeal, he also claims the district court's exclusion of this evidence was contrary to this court's holding in *Waits*. In *Waits*, we held evidence of how the accident happened was relevant on the question of whether the plaintiff was injured in the accident, as well as the nature and extent of any such injuries. 572 N.W.2d at 575.

The trial court excluded any evidence of the tortfeasor's intoxication, concluding this fact was not "relevant to the injuries suffered by [the] plaintiff" and any proba-

tive value of this evidence was outweighed by its prejudicial effect. The court specifically informed the plaintiff, however, that its ruling would not preclude evidence that the plaintiff suffered from a fear of being involved in another automobile accident. We review this ruling for an abuse of discretion. *Spahr*, 617 N.W.2d at 917.

As noted above, relevant evidence may be excluded when its probative value is substantially outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.403. We do not think the trial court abused its discretion in making that judgment call here. Contrary to Pexa's argument on appeal, the tortfeasor's intoxication is not probative of the nature and extent of Pexa's injuries. The tortfeasor's intoxication was only marginally relevant at best to the plaintiff's claim that he feared involvement in another accident. On the other hand, this type of evidence would tend to influence a jury to increase its award of compensatory damages out of sympathy for the victim of such irresponsible conduct or to punish the drunk driver. *See Weinstein's Federal Evidence* § 403.04[1][c], at 403–43, 403–46 (stating examples of unfairly prejudicial evidence include evidence that "appeals to the jury's sympathies" or "provokes a jury's instinct to punish"). Therefore, the trial court properly exercised its discretion in prohibiting evidence of the tortfeasor's intoxication.

## V. *Evidence of Insurance Contract and Its Terms.*

The plaintiff wanted the jury to know that he sought benefits under the UIM coverage of his automobile policy; that he had UIM limits of $100,000; that there had been a prior settlement with the underinsured motorist; and that the plaintiff's previous recovery from the underinsured motorist would be deducted from the

amount of damages awarded by the jury.[2] The trial court refused to permit such evidence or similarly instruct the jury, ruling this information was not relevant to the only disputed issues: the damages caused by the 1999 accident and the amount of those damages. Pexa was allowed to testify, however, that he had been insured with Auto Owners "for quite some time." Consequently, the jury knew there was an insurer/insured relationship between Auto Owners and Pexa.

On appeal, the plaintiff does not explain how the excluded evidence was relevant to any disputed fact to be determined by the jury. He simply argues the jury should have been given these details to avoid speculating on the dispute between Pexa and Auto Owners. In addition, he claims the rulings and instructions of the trial court "effectively denied [him] all right to maintain his action in contract."

 We review the court's exclusion of evidence of the insurance contract, its terms, and how the contractual recovery would be calculated for an abuse of discretion. *See State v. Sinclair*, 582 N.W.2d 762, 764 (Iowa 1998) ("This court reviews the trial court's decision on the relevancy of evidence for an abuse of discretion."). An abuse of discretion occurs when the court's decision is based on a ground or reason that is clearly untenable or when the court's discretion is exercised to a clearly unreasonable degree. *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000). We evaluate the alleged instructional error from the perspective that a trial court is generally required to give a requested instruction "when it states a correct rule of law having application to the facts of the case." *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 868

(Iowa 1989). Consequently, "[w]e review a challenge to the district court's refusal to submit a jury instruction for correction of errors of law." *State v. Ceaser*, 585 N.W.2d 192, 193 (Iowa 1998).

 It is important in evaluating the trial court's rulings to understand the context within which they were made. As noted earlier, the court submitted this case to the jury on a special verdict form that only required the jury to make two factual findings. This procedure is authorized by rule 1.933, which provides in part:

> The court may require that the verdict consist wholly of special written findings on each issue of fact. It shall then submit in writing questions susceptible of categorical or brief answers, or forms of several special findings that the jury might properly make under the issues and evidence, or submit the issues and require the findings in any other appropriate manner. It shall so instruct the jury as to enable it to find upon each issue submitted.... The court shall direct such judgment on the special verdict and answers as is appropriate thereto.

Iowa R. Civ. P. 1.933. Under this form of submission, the jury resolves pertinent factual issues pursuant to the court's instructions, and the trial court enters the general verdict "by applying the applicable law to the jury's factual determinations." *Poyzer*, 360 N.W.2d at 753. A special verdict is not to be confused with a general verdict using interrogatories, where the jury finds the facts and applies the law to the facts to render a verdict in favor of the plaintiff or the defendant. *See* Iowa R. Civ. P. 1.934 (providing for the use of interrogatories with a general verdict).

---

**2.** Pexa did not seek to have the jury informed of the settlement amount. *See Waits*, 572 N.W.2d at 570 (evidence of payment made by tortfeasor's insurer not relevant in suit against UIM insurer).

■■■ A special verdict serves two purposes: it simplifies a case for the jury and compels the jury "to more accurately focus on what it properly should." *Poyzer*, 360 N.W.2d at 753; *accord Franklin v. Sedore*, 450 N.W.2d 849, 853 (Iowa 1990). As we noted in *Franklin*, "[s]pecial verdicts contribute uniquely to the truth-finding process" because they divert jurors' "attention away from any preconceived notions of desired results." 450 N.W.2d at 853. Consequently, when a special verdict is used, "[f]actual determinations tend to be evidence based, not result oriented." *Poyzer*, 360 N.W.2d at 753. We have held that in such a submission, "it is wholly unnecessary and is generally improper for the jury to be concerned with the effect of its special findings." *Id.* It is within the trial court's discretion to employ a special verdict in lieu of a general verdict. *Franklin*, 450 N.W.2d at 853.

■■■ The trial court here did not abuse its discretion in submitting this case on a special verdict. By doing so, the court ensured the jury focused on the factual issues in dispute and decided those issues on the evidence and not to reach a certain result. The court also avoided the possible confusion that can arise when a jury is required to decide the value of a tort claim in the context of a contractual UIM claim—the proverbial "case within a case." The method of submission chosen by the

court was clearly reasonable and did not deprive the plaintiff of his right to maintain a contract action. *See Johnson v. State Farm Auto. Ins. Co.*, 504 N.W.2d 135, 138 (Iowa Ct.App.1993) (rejecting insured's claim that procedure followed by trial court, which was very similar to that employed here, improperly "forced [the plaintiff] into bringing a tort suit, when she had filed a contract suit," noting "the district court properly understood the issues before it," namely that due to the insurer's admissions, "[t]here was really no contract dispute").

■■■ Consistent with its decision to use a special verdict, the court limited the evidence to those facts that were relevant to the questions propounded to the jury. We agree with the district court that the nature of the dispute between the plaintiff and the defendant, the limits of the UIM coverage, Pexa's settlement with the tortfeasor, and the required deduction of the settlement amount from any damages awarded by the jury were not relevant to these questions. *See Waits*, 572 N.W.2d at 570 (holding evidence of tortfeasor's payment to insured irrelevant in UIM case submitted on special verdict).[3] Moreover, it would have defeated the purpose of the special verdict format to admit evidence of and instruct the jury concerning matters extraneous to these issues.[4] *See McCon-*

3. In *Waits*, we stated the case had been submitted to the jury on "a special *interrogatory*." 572 N.W.2d at 568 (emphasis added). A reading of the facts in our opinion makes it clear, however, that we misspoke; the matter was actually submitted on a special *verdict*. *See generally McConnell v. Aluminum Co. of Am.*, 367 N.W.2d 245, 246 (Iowa 1985) (noting special verdicts "should be distinguished from jury interrogatories which may appropriately be used in connection with a general verdict"). The use of a special verdict and the limited issues in dispute here and in *Waits* distinguish these cases from our decision in *Leuchtenmacher v. Farm Bureau Mutual In-*

*surance Co.*, 461 N.W.2d 291, 294–95 (Iowa 1990), where we affirmed a trial court's admission of evidence of the UIM limits. *See Waits*, 572 N.W.2d at 570 (distinguishing *Leuchtenmacher*).

4. A recent appeal of another UIM case demonstrates the wisdom of the trial court's approach in the case before us. In *Ostrem v. State Farm Mutual Automobile Insurance Co.*, 666 N.W.2d 544 (Iowa 2003), the jury was instructed on the elements the plaintiff had to prove to recover on her contractual UIM claim, but was asked to specifically list the amount of damages sustained by the insured

*nell v. Aluminum Co. of Am.*, 367 N.W.2d 245, 250 (Iowa 1985) (stating it would have been improper for the trial court to advise the jury of the effect of its special verdict answers); *cf. Poyzer*, 360 N.W.2d at 753 ("[I]t is commonly thought to be inappropriate in a special verdict submission for counsel to direct the jury's attention to the impact of any specific findings."). Therefore the court did not abuse its discretion in refusing to admit evidence of the contractual dispute between the parties. *See Johnson*, 504 N.W.2d at 138 (holding evidence of settlement with tortfeasor and insurance contract properly excluded in UIM case where insurer had admitted liability, provided insured established tortfeasor's negligence caused her injuries and damages). Likewise, the court did not err in refusing to inform the jury of the details of this dispute in the court's instructions.

## VI. *Denial of New Trial.*

Pexa filed a posttrial motion asserting he was entitled to a new trial based, in part, on various rulings made by the trial court before and during trial. *See generally* Iowa R. Civ. P. 1.1004(1), (8) (allowing new trial if movant's substantial rights are materially affected by an "abuse of discretion which prevented the movant from having a fair trial" or by "[e]rrors of law occurring in the proceedings"). We have already considered these rulings above and have found no abuse of discretion or error warranting reversal. Therefore, the trial court correctly denied the plaintiff's request for a new trial on these grounds.

In addition to relying on the claimed errors previously discussed, the plaintiff contended "the verdict of the jury [was] not sustained by the evidence in the case" and was "inadequate." He asked the court to grant a new trial on this basis or alternatively to grant a conditional new trial, allowing the defendant to avoid retrial if it would agree to an additur. *See* Iowa Rs. Civ. P. 1.1004(4), (6) (allowing new trial on the basis of "inadequate damages appearing to have been influenced by passion or prejudice" or where "verdict ... is not sustained by sufficient evidence"), 1.1010(1) (authorizing court to permit party to avoid new trial by agreeing to condition imposed by court). The trial court overruled this request as well. We review this ruling for an abuse of discretion. *See Fisher v. Davis*, 601 N.W.2d 54, 57 (Iowa 1999) (reviewing ruling on motion for new trial based on inadequacy of verdict for abuse of discretion).

" 'If uncontroverted facts show the amount of the verdict bears no reasonable relationship to the loss suffered, the verdict is inadequate.' " *Kerndt v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 417 (Iowa 1997) (citation omitted). Thus, the adequacy of a damage award depends on the facts of the particular case. *Fisher*, 601 N.W.2d at 57; *Kerndt*, 558 N.W.2d at 417. If the damages are inadequate, the trial court must either grant a new trial or, if appropriate, grant an additur. *Kerndt*, 558 N.W.2d at 417.

Although the plaintiff asserts generally in his brief that the jury's find-

---

in the accident. *Ostrem*, 666 N.W.2d at 545. During its deliberations, the jury sent two questions to the judge concerning the insured's settlement with the tortfeasor, including its effect on the jury's verdict. *Id.* After the jury returned a verdict that established the insured's damages in the accident in an amount less than the tortfeasor's liability limits, the insured appealed. *Id.* The insured argued the jury had intended to indicate in its answer the sum that was owed by the UIM carrier under its policy, rather than the total amount of damages sustained in the accident. *Id.* Although this court rejected the plaintiff's argument, we noted that "it would have been less confusing to the jury if the $100,000 [liability limits] had not even been mentioned in the court's instructions." *Id.* at 546.

ings with respect to specific items of damages "resulted in an inadequate total verdict and judgment," his argument focuses on the jury's failure to award any sum for future damages for loss of use of body and for pain and suffering. The element of loss of use of body "is the inability of a particular body part to function in a normal manner." *Brant v. Bockholt*, 532 N.W.2d 801, 804–05 (Iowa 1995). The element of pain and suffering includes bodily discomfort, mental suffering, loss of enjoyment of life, and other emotional distress. *Id.* at 804. Thus, we examine the record for evidence on these matters.

 At the time of trial the plaintiff was eighty-one years old. He testified that as a result of his injuries he had to use a wheelchair and then a walker while he was hospitalized; he was released from the hospital using a cane; and finally, approximately nine months after the accident, he was able to walk "like normal people do." He also saw a physical therapist who gave him exercises to do to strengthen his back, which had been injured in the accident. By December of 1999 he was able to exercise on a treadmill. He typically exercises every day but Sunday at the Elk's Club "to enhance [his] physical condition."

The plaintiff also testified that he was in pain in the hospital, but was given medication to "stay comfortable." He said he has pain in his pelvic area "[f]rom time to time" and, although he is not sure when it might come back, he does not "allow it to put a stress on [him]." He also testified that he has pain in his back, which he attributed to his age as well as the accident, acknowledging that his back pain could be due to his osteoarthritis. In addition, the plaintiff readily admitted he had suffered from low back pain for forty years, and after the accident had injured his back lifting a car battery. With respect to some knee and ankle "trouble" he had after the accident, he stated, "[I]t pretty well cleared up." When asked to compare how he felt physically before the accident with how he felt at the present time, he responded, "It has now been three years, and I would say I'm just beginning to feel like maybe I felt before the accident."

Pexa's testimony revealed that he had resumed his normal pre-accident activities, which five days a week consisted of an eight o'clock breakfast at a local café; exercise, lunch, and cards at the Elk's Club; dinner at the senior citizen's center; a short nap at home; followed by a drive to the casino in Tama for a late evening of gambling and bingo with friends; and, upon returning home, viewing television from eleven o'clock to midnight before retiring for the night. He denied having a fear of another accident, but he said he takes extra caution at intersections since the accident.

Medical records documenting the plaintiff's various medical conditions and the treatment he received were also admitted into evidence and depositions of two of his treating physicians were read to the jury. In a notation made by one of his doctors after a May 1, 2000, examination of the plaintiff, the doctor states that Pexa was "almost back" to the state of health he was in prior to the accident. This same physician testified in his October 2002 deposition that the crack in Pexa's pelvis had probably healed and that Pexa had not complained of any pain at the site of the fracture in the past year. Moreover, the medical records showed the plaintiff, in addition to having cancer and long-term back problems, suffered from high blood pressure and chronic leg edema.

We think the evidence before the jury supports its apparent conclusion that by the time of trial the plaintiff had made a

complete recovery from the injuries he sustained in the accident and that any existing health problems were caused by conditions and injuries unconnected with the 1999 accident. Likewise, there is sufficient evidence to support the jury's finding that Pexa would suffer no future pain and suffering and no future loss of use of body attributable to his 1999 injuries. We conclude, therefore, the trial court did not abuse its discretion in refusing to grant a new trial on the ground the damages found by the jury were inadequate. It follows the court did not abuse its discretion in failing to grant a conditional new trial. *See Kautman v. Mar–Mac Cmty. Sch. Dist.*, 255 N.W.2d 146, 148 (Iowa 1977) (holding since plaintiff was "not entitled to a new trial because of alleged inadequacy of the involved verdict any right to additur [was] concomitantly foreclosed").

VII. *Conclusion.*

We have reviewed the assignments of error urged by the plaintiff and have found no basis for reversal. Accordingly, we affirm the district court's judgment in favor of the defendant.

**AFFIRMED.**

All justices concur except LARSON, J., who takes no part.