# IN THE COURT OF APPEALS OF IOWA

No. 15-0535
Filed February 24, 2016

**RAY A. LASSER JR.,**
        Plaintiff-Appellant,

**vs.**

**CLIFFORD L. MCNEAL,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Wapello County, Annette J. Scieszinski, Judge.

A plaintiff appeals the district court's directed verdict on punitive damages and its decision to reduce the past medical expenses awarded by the jury. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Steven Gardner of Denefe, Gardner & Zingg, P.C., Ottumwa, for appellant.

Bryan J. Goldsmith of Gaumer, Emanuel, Carpenter & Goldsmith, P.C., Ottumwa, for appellee.

Considered by Tabor, P.J., Bower, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**SCOTT, Senior Judge.**

Ray Lasser appeals following a jury verdict in his lawsuit against Clifford McNeal for battery. He asserts the court erred in refusing to submit his claim for punitive damages to the jury. He also asserts the court should not have reduced the jury's verdict pertaining to his past medical expenses.

**I. Background Facts and Proceedings.**

On September 13, 2009, Lasser and McNeal were involved in a physical altercation at Lasser's home. Both men give entirely different accounts of the altercation, both claiming the other was the aggressor. Lasser filed suit against McNeal for battery and trespass on August 11, 2011, seeking damages for pain and suffering, medical and dental bills, and mental anguish and seeking an award of punitive damages. McNeal answered and asserted a counterclaim against Lasser for his injuries and the damages to his car. McNeal likewise sought an award of punitive damages.

The case was tried to a jury, but before the matter was submitted, the court granted McNeal's motion for a directed verdict excluding both parties' claims for punitive damages from the jury's consideration. The jury returned a verdict in favor of Lasser, finding McNeal committed battery upon Lasser, and awarding Lasser $50,721.61 in past medical expenses, $30,000.00 for past physical and mental pain and suffering, and $5103.00 for past loss of sick-leave benefits for a total damage award of $85,824.61. The jury also concluded Lasser did not commit a battery upon McNeal, awarding McNeal no damages on his counterclaim.

McNeal filed a motion for remitter or, in the alternative, a motion for a new trial, asserting the award of past medical expenses was too high in light of the fact that the amount awarded was the total amount billed by the care provider and was not what the health insurance company paid for those services. Evidence was admitted at trial that the health insurance company's subrogation interest was $22,918.44 for the medical expenses paid on Lasser's behalf.[1] McNeal asserted the jury awarded the higher "billed" amount to punish McNeal due to Lasser's repeated attacks on McNeal's untruthful and violent character during trial. Lasser resisted this posttrial motion, but the court granted the remitter concluding Lasser's doctor testified as to the reasonableness of only her charges—$1331.00—but did not state the other billed charges were fair and reasonable. Therefore, the court entered judgment for the medical expenses for $23,186.36, which included the $22,726.22[2] paid by the health insurer, the $393.80 the insurer wrote off of Lasser's doctor's billed amounts, and $66.34 paid directly by Lasser. The total judgment the court entered in favor of Lasser was $58,289.36.

Lasser appeals.

## II. Scope and Standard of Review.

Our review of a district court's ruling on a motion for a directed verdict is for the correction of error at law. *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d

---

[1] In reaching this figure, McNeal's attorney used the total the health insurance company had paid on behalf of Lasser for both medical expenses and prescription drug coverage; however, based on the amount awarded, the jury did not add to the medical expense award the amount paid for prescription drugs.

[2] In calculating the total medical expenses, the court, like the jury, did not consider the amount paid by Lasser or the health insurance company for prescription drugs. Neither party appeals this issue, and we will therefore not address it further.

388, 391 (Iowa 2001). We view the evidence in the light most favorable to the party opposing the motion to determine if reasonable minds could differ on an issue of fact. *Id.* If reasonable minds could differ, the issue should be submitted to the jury. *Id.* The party opposing the motion must have presented substantial evidence on each element of the claim; otherwise, a directed verdict is appropriate. *Id.* "Evidence is substantial if a jury could reasonably infer a fact from the evidence." *Id.* (citation omitted). It is more prudent for the court to submit the case to a jury even if the case is weak so that judicial and party resources are not wasted in conducting a second trial should we find error in granting a directed verdict motion. *Hill v. Damm*, 804 N.W.2d 95, 98 (Iowa Ct. App. 2011).

We review the district court's decision to grant a remittitur for an abuse of discretion. *Triplett v. McCourt Mfg. Corp.*, 742 N.W.2d 600, 602 (Iowa Ct. App. 2007). "An abuse-of-discretion standard is appropriate because the trial court has had the advantage of seeing and hearing the evidence . . . ." *Id.* We will find an abuse of discretion only when the trial court's decision is clearly untenable or to an extent clearly unreasonable. *Id.*

### III. Punitive Damages.

In his first claim on appeal, Lasser asserts the district court erred in granting McNeal's directed verdict on punitive damages, refusing to submit the issue to the jury. Lasser claims because there was sufficient proof of assault and battery—an intentional tort—to submit to the jury, then a punitive damage claim should also be properly submitted. He asserts intentional tort cases always permit the recovery of punitive damages. While we do not necessarily agree all

intentional torts automatically permit the recovery of punitive damages, we do conclude the court erred in not submitting the issue to the jury in this case.

For a punitive damage claim to be submitted to the jury, there must be proof by "a preponderance of clear, convincing, and satisfactory evidence" the defendant acted willfully and wantonly in disregard for the rights and safety of another.  Iowa Code § 668A.1(1)(a) (2011); *Miranda v. Said*, 836 N.W.2d 8, 34 (Iowa 2013).

> [C]onduct is willful and wanton when "[t]he actor has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences."

*Miranda*, 836 N.W.2d at 34 (second alteration in original) (citation omitted). Lasser had to show McNeal's conduct constituted actual or legal malice.  *See Gibson*, 621 N.W.2d at 396.  "'Actual malice is characterized by such factors as personal spite, hatred, or ill will.'  'Legal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights.'"  *Id.* (citations omitted).

The evidence presented at trial, viewed in the light most favorable to Lasser, showed the following.[3]  Lasser testified he was working on a car in his garage when McNeal arrived.  The two men had a verbal exchange regarding the work that had been done on a car in Lasser's garage, and McNeal stated, "You

---

[3] We note McNeal's description of the altercation was vastly different from Lasser's version.  McNeal claimed Lasser was the aggressor in the fight, tackling him to the ground as he attempted to leave and striking him in the abdomen with a sledgehammer handle.  However, when reviewing a court's directed verdict motion, we must view the evidence in the light most favorable to the nonmoving party.  *Gibson*, 621 N.W.2d at 391.

want to fight; I'm going to kill you." McNeal then attacked Lasser in front of Lasser's garage. Lasser described McNeal hit him in the face many times, knocked off his glasses, and kicked him. In an attempt to defend himself, Lasser grabbed ahold of McNeal, and the two rolled to the ground. McNeal's father broke the two apart. Lasser then walked back toward his garage when McNeal jumped on his back and knocked him to the ground. McNeal kept swinging and hitting him in the face, head, and stomach, continuing to tell Lasser he was going to kill him. McNeal's father again broke up the fight. Lasser then grabbed a broken sledgehammer handle and struck McNeal's car, breaking a window. Both McNeal and his father then rushed Lasser, knocking him to the ground and rendering him unconscious. When Lasser woke up, McNeal was on top of him with his hand round Lasser's throat, choking him and telling him he was going to kill him. McNeal's father then said he heard sirens and that McNeal needed to leave quickly. McNeal left, and Lasser heard the two say that they would get back at Lasser in their own way. Lasser estimated he was struck in the face seven or eight times at least, maybe more.

The police arrived shortly thereafter, and Lasser told the officer it was just a family disagreement[4] and that everything was fine. After trying to get McNeal's belongings out of Lasser's garage with the help of McNeal's father, Lasser went inside his house to tell his wife what had happened. He collapsed to his knees as he entered the kitchen. Lasser's wife, Kathy, described seeing bruises on Lasser's eye, around his throat, and on his stomach, and saw a big scrape on his left arm. Lasser was initially seen in the emergency room the day after the

---

[4] Lasser and McNeal have the same mother, and McNeal's father is Lasser's step-father.

assault and then discharged home. However, when he did not improve over the next several days and went on to develop a high fever, Lasser returned to the hospital where he was eventually admitted into the intensive care unit for a staph infection. After he was discharged from the hospital, Lasser had to receive daily doses of intravenous antibiotics to continue to treat his infection. Kathy testified it took Lasser four to six months to recover from the physical injuries sustained in the assault and Lasser still struggled with the emotional injuries. Lasser admitted photographs of his injuries and also offered testimony from various witnesses to establish McNeal had a reputation as both an untruthful and a violent man.

From this evidence, we find a reasonable jury could conclude McNeal acted with willful and wanton disregard for the rights and safety of Lasser, such that the issue of punitive damages should have been submitted to the fact-finder for a determination. *See* Iowa Code § 668A.1(1)(a). Based on Lasser's testimony, McNeal attacked him, punching, kicking, and strangling him, all while telling Lasser that he was going to kill him. This was evidence a reasonable jury could have found amounted to actual malice—"personal spite, hatred, or ill will." *See Gibson*, 621 N.W.2d at 396 (citation omitted). The evidence was such that the jury could conclude McNeal intentionally did an unreasonable act disregarding a known or obvious risk that a physical assault on Lasser would cause harm. *Miranda*, 836 N.W.2d at 34. We thus conclude Lasser's claim of punitive damages should have been submitted to the jury.[5]

---

[5] McNeal did not appeal the district court's decision to enter a directed verdict on his claim for punitive damages against Lasser. We therefore do not address that issue.

**IV.  Medical Bills.**

Lasser also claims the court abused its discretion in reducing the jury's award of medical expenses.  Because evidence was submitted to the jury showing both the billed amount and the insurance payment amount, Lasser claims it was in the providence of the jury to determine the fair value of his medical expenses.

Our supreme court has stated:

> An injured plaintiff may recover only the reasonable and necessary costs of medical care.  Therefore, the plaintiff has the burden to prove the reasonable value of the services rendered.  The reasonable value of medical services can be shown by evidence of the amount paid for such services or through the testimony of a qualified expert witness.  The amount charged, standing alone, is not evidence of the reasonable and fair value of the services rendered.  *The billed amount is relevant only if that figure was paid or an expert witness has testified to the reasonableness of the charges.  We have consistently held that evidence of the amount charged will not, in the absence of proof of the reasonableness of the billed sum, support recovery of medical expenses.*

*Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 156 (Iowa 2004) (emphasis added) (citations omitted).

During discovery, Lasser sent McNeal's counsel requests for admission, which attached his medical records and billing statements and requested McNeal admit that the documents were true and accurate copies and were "admissible into evidence at trial without objection."  The admission request did not address whether the amount billed was reasonable.  McNeal failed to admit or deny the requests within thirty days, and the billing records were thereby admitted into evidence at trial without any foundational objection.  However, simply because the evidence of the amount billed came before the jury during trial does not mean

it was sufficient for the jury to base its verdict on that evidence alone. There needed to be evidence that the amount billed was actually paid or expert testimony to support the conclusion that the amount billed was reasonable. *Id.* at 157 ("[T]he relevant fact in the assessment of damages is the *reasonable and necessary cost* of medical care, which may or may not be the same as the medical bills. . . . [O]nly when the charged amounts have been paid or an expert testifies they are fair and reasonable do the medical bills take on any probative value.").

At trial, Lasser's doctor testified, via deposition, the charges she submitted were "fair and reasonable for the services [she] provided." She was asked to assume the charges from the hospital were reasonable and then affirmed the care given to Lasser was needed. The doctor went on to state that the hospital charges "are appropriate." As the district court correctly found, this testimony "fell short of proving that all other billed health care charges of $49,456.95 were reasonable." We find no abuse of discretion in the district court's decision to reduce the medical-expense damages awarded by the jury in light of the lack of evidence to support the reasonableness of the amounts billed.

## V. Conclusion.

Because we conclude the district court erred in directing verdict on the punitive damages claim, the case must be reversed and remanded for a new trial on that issue only. *See Miranda*, 836 N.W.2d at 35. However, we affirm the district court's decision to reduce the medical expense damages awarded by the jury.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**