## IN THE COURT OF APPEALS OF IOWA

No. 14-1058
Filed September 23, 2015

**BRENDA J. ALCALA,**
        Plaintiff-Appellee,

**vs.**

**MARRIOTT INTERNATIONAL, INC.,**
**COURTYARD MANAGEMENT**
**CORPORATION d/b/a QUAD CITIES**
**COURTYARD BY MARRIOTT,**
        Defendants-Appellants,

**MARRIOTT BUSINESS SERVICES,**
**and HPTCY CORPORATION,**
        Defendants.
_____

        Appeal from the Iowa District Court for Scott County, Mark J. Smith,

Judge.


        Marriott International, Inc. and Courtyard Management Corporation appeal

the jury verdict awarding Brenda Alcala damages.  **REVERSED AND**

**REMANDED.**


        Mark McCormick of Belin McCormick, P.C., Des Moines, for appellants.

        Michael K. Bush of Bush, Motto, Creen, Koury & Halligan, P.L.C.,

Davenport, for appellee.


        Heard by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Marriott International, Inc. and Courtyard Management Corporation d/b/a Quad Cities Courtyard by Marriott (Marriott) appeal the jury verdict awarding Brenda Alcala damages for injuries she sustained when she slipped and fell at the Marriott hotel in Bettendorf. Marriott claims the jury should have been instructed on the "continuing storm doctrine," the district court erred by instructing the jury on private safety standards, and the district court erred by submitting a specification accusing Marriott of negligence in training its employees. We find the district court abused its discretion by failing to submit the continuing storm doctrine instruction to the jury. Additionally, we find the district court erred by allowing the jury to be instructed on private safety standards and by instructing the jury on Marriott's negligent training of its employees. We remand for a new trial.

## I.    BACKGROUND FACTS AND PROCEEDINGS

At 8:00 a.m. on Wednesday January 21, 2010, Alcala slipped and fell on the sidewalk in front of the Bettendorf Marriott where she was a guest. The fall resulted in injuries to Alcala's ankle.

Alcala filed a petition on January 20, 2012, claiming she had slipped and fallen on "ice that had accumulated on the walkway and parking lot" of the Marriott. Alcala claimed Marriott was "negligent in failing to properly maintain the premises for use of invitees and for failing to warn such invitees of the existence of a dangerous condition." She sought compensation from Marriottt for her injury.

On January 20, the day before Alcala's injury, Bettendorf experienced a wintery mix of freezing rain and snow.  The forecast for January 20 through 21 from the National Climatic Data Center stated:

> INCLUDING THE CITIES OF. . . CLINTON . . . BETTENDORF . . . DAVENPORT . . . MOLINE . . . ROCK ISLAND
> 959 AM CST WED JAN 20 2010
> FREEZING RAIN ADVISORY IN EFFECT UNTIL 6 AM CST THURSDAY . . .
> REST OF TODAY . . . BLUSTERY.  FREEZING RAIN LIKELY AND A CHANCE OF SLEET LATE IN THE MORNING . . . THEN FREEZING RAIN IN THE AFTERNOON.  NEW ICE ACCUMULATION UP TO ONE QUARTER OF AN INCH.  HIGH IN THE LOWER 30S.  EAST WIND 15 TO 25 MPH WITH GUSTS OF AROUND 30 MPH.  CHANCE OF PRECIPITATION 90 PERCENT . . . TONIGHT . . . BLUSTERY.  NOT AS COLD.  FREEZING RAIN IN THE EVENING . . . THEN FREEZING RAIN LIKELY AFTER MIDNIGHT. ICE ACCUMULATION OF LESS THAN ONE QUARTER OF AN INCH.  LOW IN THE UPPER 20S.  EAST WIND 15 TO 25 MPH.  CHANCE OF PRECIPITATION 80 PERCENT. THURSDAY. . . CLOUDY WITH A CHANCE OF LIGHT RAIN . . . FREEZING RAIN AND AREAS OF FREEZING DRIZZLE.  HIGH IN THE LOWER 30S.  EAST WIND 10 TO 20 MPH. GUSTS UP TO 25 MPH IN THE MORNING.  CHANCE OF PRECIPITATION 50 PERCENT.
> . . . .
> INCLUDING THE CITIES OF . . . BETTENDORF . . . DAVENPORT . . . MOLINE . . . ROCK ISLAND . . . ALEDO
> 630 AM CST THU JAN 21 2010.
> REST OF TODAY . . . CLOUDY.  A CHANCE OF FREEZING RAIN AND PATCHY FREEZING DRIZZLE IN THE MORNING . . . THEN A CHANCE OF LIGHT RAIN I N THE AFTERNOON. HIGH IN THE MID 30S.  EAST WIND 10 TO 20 MPH WITH GUSTS TO AROUND 25 MPH.  CHANCE OF PRECIPITATION 50 PERCENT.

Climatological data from the Quad City International Airport in Moline, Illinois, (8.38 miles south of the Marriott property) show the average temperature on January 20 was twenty-seven degrees and the area received .53 of an inch of precipitation.  The precipitation consisted of freezing rain and fog.  Data for

January 21 show an average temperature of thirty-two degrees with no precipitation and a "mist" throughout the morning hours.

Climatological data from the Davenport Municipal Airport (8.04 miles northwest of the Marriott) for January 20 show the average temperature was twenty-six degrees and the area received .32 of an inch of precipitation consisting of freezing rain or drizzle and fog or mist. On January 21, the average temperature was thirty degrees with a trace amount of precipitation consisting of fog or mist, freezing rain or drizzle, and smoke or haze.

The National Climatic Data Center produced a report titled: *Storm Data and Unusual Weather Phenomena—January 2010*, which summarized the weather conditions for the Quad Cities area on January 20 (this report did not include any references to January 21—the day of the incident).

> A strong upper air disturbance moved from Kansas to central Illinois on January 20, 2010. This was combined with a weak surface wave moving along a stationary front that extended from southern Missouri to Kentucky. Temperatures above the surface were above freezing, but below freezing at the ground. The result was an ice storm over much of eastern Iowa, western Illinois and extreme northeast Missouri, with widespread ice accumulations of 1/4 to 1/2 inch. Isolated thunderstorms also roamed across locations south of Highway 34 in southeast Iowa and extreme northeast Missouri. The ice knocked down some 1 to 2 inch diameter tree branches and smaller limbs, as winds gusted to 35 mph. There were also scattered power outages that lasted for up to two days, but no major outages were reported. In some areas, numerous accidents and vehicles sliding off the roads were reported.

A jury trial was held in February 2014. The jury was presented with the above climatological data, heard from witnesses regarding the weather, and heard from experts concerning private industry safety standards for maintaining

safe exterior walkways. Particularly relevant to this appeal, the jury was instructed concerning expert testimony; Alcala's burden of proof to obtain damages; private industry standards including the American Safety Testing Materials (ASTM) standard practice for safe walking surfaces and American National Standards Institute (ANSI) requirements for snow and ice removal; and a definition of damages. Marriott submitted a jury instruction concerning the "continuing storm doctrine," but the court found there was not substantial evidence to support giving the instruction. Alcala proposed instructions concerning private industry standards, and negligence in the training of Marriott's employees in removing snow and ice. The court found substantial evidence supported these instructions and submitted them over Marriott's objections.

Upon submission of the case to the jury, a verdict setting Alcala's damages at $1,210,860.56 was returned. Marriott filed motions for judgment notwithstanding the verdict (JNOV), remittitur, and new trial. The district court denied Marriott's motions. Marriott now appeals.

## II. STANDARD OF REVIEW

We review a claim concerning whether the trial court should have given a party's requested jury instruction for an abuse of discretion. *Hagenow v. Schmidt*, 842 N.W.2d 661, 670 (Iowa 2014). "An abuse of discretion occurs when the court's decision is based on a ground or reason that is clearly untenable or when the court's discretion is exercised to a clearly unreasonable degree." *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 160 (Iowa 2004). Iowa law requires a court to give a requested jury instruction if it correctly states the

applicable law and is not embodied in other instructions. *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 868 (Iowa 1989).

Relatedly, "[w]e review a claim that the district court gave an instruction not supported by the evidence for correction of errors at law." *Pavone v. Kirke*, 801 N.W.2d 477, 494 (Iowa 2011). "There must be substantial evidence in the record to support the instruction submitted. Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Coker v. Abell-Howe Co.*, 491 N.W.2d 143, 150 (Iowa 1992). "Instructions must be considered as a whole, and if the jury has not been misled there is no reversible error." *Thavenet v. Davis*, 589 N.W.2d 233, 236 (Iowa 1999).

## III.  DISCUSSION

### A.  Continuing Storm Doctrine

Marriott claims the district court abused its discretion by refusing to instruct the jury on the continuing storm doctrine.

We recently discussed and applied the continuing storm doctrine in *Rochford v. G.K. Development, Inc.*:

> The authorities are in substantial accord in support of the rule that a business establishment, landlord, carrier, or other inviter, in the absence of unusual circumstances, is permitted to await the end of the storm and a reasonable time thereafter to remove ice and snow from an outdoor entrance walk, platform, or steps. The general controlling principle is that changing conditions due to the pending storm render it inexpedient and impracticable to take earlier effective action, and that ordinary care does not require it.

845 N.W.2d 715, 716–17 (Iowa Ct. App. 2014) (citing *Reuter v. Iowa Trust & Savings Bank*, 57 N.W.2d 225, 227 (Iowa 1953)). *Rochford* concerned the slip-and-fall injury sustained by a customer (Karen) outside of a shopping mall. 845

N.W.2d at 716. The weather on the day of the injury was described as "cold and drizzly." *Id.* The temperature "hovered right around thirty degrees," with a precipitation total of .06 of an inch. *Id.* In affirming the district court's grant of summary judgment to the shopping mall, we reasoned:

> While there is no Iowa case law that addresses how severe or significant the weather event has to be to qualify as a "storm," other jurisdictions have concluded that the continuing storm doctrine—or "storm in progress" doctrine—"is not limited to situations where blizzard conditions exist; it also applies in situations where there is some type of less severe, yet still inclement winter weather." *Glover v. Botsford*, 971 N.Y.S.2d 771, 772 (N.Y. App. Div. 2013). In *Convertini v. Stewart's Ice Cream Co.*, 743 N.Y.S.2d 637, 638 (N.Y. App. Div. 2002), the court applied the "storm in progress" doctrine to dismiss the plaintiff's claim on summary judgment where evidence showed "light freezing rain" fell for an hour the morning of the fall and had stopped just twenty minutes before plaintiff fell. The Virginia Supreme Court asserted "a storm does not have to be 'raging' in order for a business inviter to wait until the end of the storm before removing ice and snow." *Amos v. NationsBank, N.A.*, 504 S.E.2d 365, 367–68 (Va. 1998) (affirming the setting aside of a jury verdict despite plaintiff's testimony that there was only "light drizzle" at the time of the fall where the evidence overwhelmingly showed an ongoing ice storm with precipitation falling and freezing on the ground).
>
> The evidence here establishes that at the time of the plaintiff's fall at around 4:00 p.m. freezing rain was falling and continued falling until around 10:30 p.m. when the temperature rose above freezing. This freezing rain resulted in the sidewalks icing over, leading to Karen's fall. The freezing rain had not stopped before Karen's fall, so the landlord was not yet under a duty to take steps to remove the ice. Whatever this "weather event" is called, we find it was of sufficient significance to qualify for the application of the continuing storm doctrine. We affirm the district court's grant of summary judgment for G.K. Development as there was no factual issue to present to the jury. *See Underwood v. Estate of Miller*, No. 10–0052, 2010 WL 3503959, at *1 (Iowa Ct. App. Sept. 9, 2010) (finding the evidence generated a fact question about when the storm stopped so the case was properly submitted to the jury).

*Id.* at 718.

In denying Marriott's requested instruction on the continuing storm doctrine, the district court reasoned (based on the lack of case-law concerning the definition of when a storm ends versus when it continues) the evidence presented at trial would not warrant submitting the instruction to the jury. We disagree. The jury received climatological data from two weather stations—both stations were located about eight miles from the hotel in opposite directions. The jury also received a weather report showing freezing rain and fog had occurred over Bettendorf the day prior to the injury. Testimony and the forecast showed the inclement weather continued in the early morning hours of January 21 until about noon that day and there was testimony for at least one witness supporting giving the instruction. The precipitation registered as a "trace," and consisted of fog and drizzle. Based on our broad definition of the continuing storm doctrine in *Rochford*, where we found .06 of freezing rain precipitation was of "sufficient significance" to apply the continuing storm doctrine, we find the district court unreasonably denied Marriott's requested jury instruction. We find the district court abused its discretion by failing to submit the continuing storm doctrine instruction to the jury. We remand for new trial.

## B.     Private Industry Standards

As this issue may arise on retrial, we address Marriott's claim that the district court erred in failing to reconcile a conflict between the parties' experts concerning whether private industry safety standards were applicable in this case. Our supreme court discussed the applicability of private safety code standards in *Jorgensen v. Horton*:

We believe such codes upon proper foundation are admissible but not conclusive on the issue of negligence. *See, e.g.*, *Cronk v. Iowa Power & Light Co.*, 138 N.W.2d 843, 848 (Iowa 1965). They are admissible as an exception to the hearsay rule on the basis of trustworthiness and necessity. *Nordstrom v. White Metal Rolling & Stamping Corp.*, 453 P.2d 619 (Wa. 1969); *cf.* McCormick on Evidence § 321 at 743-745 (Second Ed. 1972). As such they are an alternative to or are intended to buttress expert testimony. Frequently expert testimony will be used to impeach them. Evidence of experts is not ordinarily conclusive on the issue of due care whether found in a book or in oral testimony.

We are unwilling to say private safety codes like the one involved in this case necessarily define the standard of conduct of a reasonable man. Violation of standards in such codes is evidence on the issue of negligence but not negligence per se.

206 N.W.2d 100, 103 (Iowa 1973).

At trial, both parties presented experts who testified about safety standards published by ASTM and ANSI. Alcala presented the testimony of Russell Kendozier, who defined the standards and gave his opinion on how Marriott had violated the standards. Alcala did not enter the actual text of the safety standards into evidence. Marriott presented the testimony of Alan Bowman, who testified the standards identified by Kendozier were inapplicable to the events surrounding Alcala's fall. Bowman noted the standards do not create duties regarding the removal of ice and snow from walkways. He also noted the standards discussed by Kendozier referred to the metric of slip resistance for finish on the surface of the concrete walkway. "Broom-finishing" a walkway satisfies the slip resistance standard whether the walkway is icy or not.

The district court submitted the following instruction, over Marriott's objection:

American Safety and Testing Materials (ASTM) Standard Practice for Safe Walking Surfaces requires exterior walkways shall

be maintained so as to provide safe walking conditions (5.7.1). In addition, said standards require that exterior walkways shall be slip resistant (5.7.1.1). Finally, if an exterior walkway is slippery, it is to be considered substandard (5.7.1.2). American National Standards Institute (ANSI) requires that where snow and ice exists in pedestrian walkways, safe maintenance techniques shall include plowing, shoveling, deicing, salting or ice melting chemicals, and sanding, as needed (10.3.1).

You may consider a violation of these standards as evidence of negligence.

We find the district court erred by submitting this instruction to the jury because it was not supported by substantial evidence. In its objection to the instruction, Marriott stated substantial evidence did not exist to support submitting the instruction to the jury due to the dispute on whether the standards were even applicable to the circumstance in this case. Marriott noted the instruction gave "undue emphasis to something that everybody agrees isn't even applicable or a legal standard in this jurisdiction." We find, given the conflict between the two experts, and the failure by Alcala to submit the text of the standards into evidence, there was not substantial evidence to submit this question to the jury. *See Coker*, 491 N.W.2d at 150. We find the district court erred, and reverse and remand.

## C. Negligent Training

Marriott claims the district court erred in submitting a specification accusing Marriott of negligence in training its employees as it was not supported by substantial evidence. Specifically, Marriott claims the record is devoid of evidence concerning the standard of care on which the jury could gauge Marriott's training of its employees on ice removal.

The court submitted the following instruction (instruction 16) to the jury:

The Plaintiff must prove all of the following propositions:

1. The defendant knew or in the exercise of reasonable care should have known of a condition on the premises and that it involved an unreasonable risk of injury to a person in the plaintiff's position.

2. The defendant knew or in the exercise of reasonable care should have known:

    a. The plaintiff would not discover the condition, or

    b. The plaintiff would not realize the condition presented an unreasonable risk of injury, or

    c. The plaintiff would not protect herself from the condition.

3. The defendant was negligent in one or more of the following:

    a. Improper training,

    b. Inadequate maintenance,

    c. Failing to inspect from 6:00 a.m., until 7:45 a.m., or

    d. Failing to provide a slip resistant walkway.

4. The negligence was a cause of the plaintiff's damage.

5. The nature and extent of damages.

If the plaintiff has failed to prove any of these propositions, the plaintiff is not entitled to damages. If the plaintiff has proved all of these propositions, the plaintiff is entitled to damages in some amount. If the plaintiff has proved all of the propositions, then you will consider the defense of comparative fault as explained in instruction number 25.

Marriott objected to the submission of instruction 16 as follows:

[Marriott:] Oh, I think we objected on Instruction No. 16. I don't think there's any evidence that Defendant was negligent in improper training. I understand that's a fact issue.

[Alcala:] I think Margaret DePaepe herself said nobody trained her how to shovel and salt.

[Marriott:] I don't think there's substantial evidence for No. 16 under paragraph 3(a).

[The Court:] I think that, based on the testimony of Ms. DePaepe, that's up to the jury and there's substantial evidence to warrant that portion of the instruction.

Margaret DePaepe worked as a maintenance employee for Marriott and she was responsible for removing ice from the exterior hotel walkways on the

morning of January 21. DePaepe testified she spread de-icing compound on the sidewalks on three separate occasions that morning—her account was supported by a "property tour checklist" she marked after each application of de-icer. DePaepe stated she received training consisting of a video presentation, and she attended a "refresher" meeting for Marriott's procedures on how to address icy walkways prior to the winter season. Alcala presented an expert witness who testified about the standards for walkway surfaces. He also opined about ice and snow removal. He did not present an opinion on the adequacy of Marriott's training procedures or if DePaepe followed those procedures. Testimony or other evidence is required to establish a standard to enable the jury to evaluate Marriott's conduct. *Cerro Gordo Hotel Co. v. City of Mason City*, 505 N.W.2d 509, 511 (Iowa Ct. App. 1993) (finding the court's rejection of a negligence instruction was proper as the instruction was not supported by substantial evidence due to a lack of "testimony regarding the standard of care upon which the jury could judge the conduct of" the defendant). Upon our review of the record, we find there is not substantial evidence to support the submission of the negligent-training instruction to the jury, and the jury was misled by the specification concerning negligent training. *See id.* We reverse and remand.

## V. CONCLUSION

We find the district court abused its discretion by failing to submit a jury instruction concerning the continuing storm doctrine to the jury. We find there was not substantial evidence to submit the jury instructions concerning private industry standards and on negligent training. Marriott was prejudiced by the

submission of these instructions and the jury was misled. We reverse and remand for new trial.

**REVERSED AND REMANDED.**

Tabor, P.J., concurs; McDonald, J., dissents in part.

**MCDONALD, J.** (dissenting in part and concurring in part)

I concur in part and dissent in part. I concur in the majority's opinion the district court erred in submitting instructions concerning private industry standards and negligent training. I concur in the conclusion the errors were prejudicial, requiring new trial. I respectfully dissent from the majority's opinion the district court abused its discretion in refusing Marriott's requested instruction regarding the continuing storm doctrine.

I first address the standard of review. There is a lurking inconsistency regarding the standard of review applied to the district court's refusal to give a requested jury instruction. Traditionally, the refusal to give a requested instruction was reviewed for the correction of legal error. *See*, *e.g.*, *Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 823 (Iowa 2000) ("We review refusals to give jury instructions for correction of errors at law."); *Kuehn v. Jenkins*, 100 N.W.2d 610, 617 (Iowa 1960) ("We have so often said that the theories of both parties to a lawsuit, so far as they are supported by substantial evidence, must be submitted, and that it is prejudicial error to fail to do so, that citation of authorities seems needless."); *see also State v. Young*, No. 14-0271, 2015 WL 1055070, at *1 (Iowa Ct. App. Mar. 11, 2015) (reviewing declination of requested instruction for errors at law). In *State v. Piper*, 663 N.W.2d 894, 914 (Iowa 2003), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010), however, the court stated "review of alleged instructional error depends on the nature of the supposed error." The court then cited two cases— one for the proposition that a challenge to an instruction given is reviewed for

legal error and one for the proposition that the refusal to give an instruction is reviewed for an abuse of discretion. *See Piper*, 663 N.W.2d at 551 (citing *State v. Walker*, 600 N.W.2d 606 (Iowa 1999) and *State v. Langlet*, 283 N.W.2d 330 (Iowa 1979)). Both standards have been applied post-*Piper*. Compare *Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009) (stating that review is for correction of errors at law and that it is "error for a court to refuse to give a requested instruction where it correctly states the law, has application to the case, and is not stated elsewhere in the instructions" (internal quotations omitted)), and *Banks v. Beckwith*, 762 N.W.2d 149, 151 (Iowa 2009) (analyzing failure to give instruction for correction of errors at law), *with Summy v. City of Des Moines*, 708 N.W.2d 333, 340 (Iowa 2006) ("We review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion."), *Anderson v. State*, 692 N.W.2d 360, 363 (Iowa 2005) (same); *Kiesau v. Bantz*, 686 N.W.2d 164, 171 (Iowa 2004) (same and citing *Piper*).

Although both standards have been used post-*Piper*, the trend in the most recent cases is to apply an abuse-of-discretion standard. For example:

> We review challenges to jury instructions for correction of errors at law." *State v. Frei*, 831 N.W.2d 70, 73 (Iowa 2013); *see also* Iowa R. App. P. 6.907. Yet, "[w]e review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion." *Summy*, [708 N.W.2d at] 340. Discretion is afforded the trial court in this instance because the decision involves an assessment of the evidence in the case. "When weighing sufficiency of evidence to support a requested instruction, we construe the evidence in a light most favorable to the party seeking submission." *Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994). "'Error in giving or refusing to give a jury instruction does not warrant reversal unless it results in prejudice to

> the complaining party.'" *Hagenow v. Schmidt*, 842 N.W.2d 661, 670 (Iowa 2014) (quoting *Koenig v. Koenig*, 766 N.W.2d 635, 637 (Iowa 2009)). "'When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice.'" *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010) (quoting *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985)). "'Errors in jury instructions are presumed prejudicial unless "the record affirmatively establishes there was no prejudice.'" *Asher v. OB–Gyn Specialists, P.C.*, 846 N.W.2d 492, 496 (Iowa 2014) (quoting *State v. Murray*, 796 N.W.2d 907, 908 (Iowa 2011)).

*State v. Guerrero Cordero*, 861 N.W.2d 253, 257-58 (Iowa 2015). *See*, *e.g.*, *Asher*, 846 N.W.2d at 496 (stating standard of review is abuse of discretion); *State v. Miller*, 841 N.W.2d 583, 585-86 (Iowa 2014) (same); *Frei*, 831 N.W.2d at 73 (same); *Crawford v. Yotty*, 828 N.W.2d 295, 298 (Iowa 2013) (same).

Five things should be noted regarding the most recent cases applying an abuse-of-discretion standard. First, the lineage of the most recent cases start with *Piper*. Second, *Piper* does not state the refusal to give a requested instruction, generally, is reviewed for an abuse of discretion. Instead, *Piper* states only review of the district court's "refusal to give an '*inference instruction on alleged spoliation*'" is for an abuse of discretion. *See Piper*, 663 N.W.2d at 914 (emphasis added) (citing *Langlet*, 283 N.W.2d at 336). Third, while the *Langlet* court, upon which *Piper* relied, applied an abuse-of-discretion standard, it did so because of the unique policy considerations and discretionary decisions inherent in determining whether a spoliation instruction should be given in a particular case. *See Langlet*, 283 N.W.2d at 335. Specifically, a spoliation instruction is a form of discovery sanction. *See* Iowa R. Evid. 1.517(3) (stating that a party that fails to provide discovery as required by our rules may be

sanctioned by an order stating designated facts shall be taken to be established for the purposes of the action as set forth in rule 1.517(2)(b)).  The imposition of a discovery sanction is discretionary and will be reversed only when that discretion has been abused.  *See Suckow v. Boone State Bank & Trust Co.*, 314 N.W.2d 421, 425 (Iowa 1982).  Fourth, *Langlet* did not state that the refusal to give a requested jury instruction, generally, is reviewed for an abuse of discretion.  Thus, fifth and finally, our most recent precedents all ultimately rely on a single case that does not stand for the proposition for which it is cited.

"The above discussion reveals that our precedents in this area are not surefooted."  *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 898 (Iowa 2015).  The unsteady nature of the post-*Piper* precedents is highlighted by the manner in which review is actually conducted.  The abuse-of-discretion standard implicitly recognizes that a decision "is a judgment call on the part of the trial court."  *State v. Rodriquez*, 636 N.W.2d 234, 240 (Iowa 2001).  In other words, there is some play in the joints, and the reviewing court generally will not disturb the district court's decision unless it "is based on a ground or reason that is clearly untenable or when the court's discretion is exercised to a clearly unreasonable degree."  *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 160 (Iowa 2004).  However, controlling case law provides the district court does not have the discretion to refuse to instruct the jury on the applicable law.  Instead, "[t]he district court must give a requested jury instruction if the instruction (1) correctly states the law, (2) has application to the case, and (3) is not stated elsewhere in the instructions."  *Weyerhaeuser*, 620 N.W.2d at 823.  Because of this rule, when

a reviewing court concludes there is substantial evidence to support an instruction, the reviewing court generally also concludes the district court was required to give the instruction. *See*, *e.g.*, *id.* at 823-24 ("'Parties are entitled to have their legal theories submitted to the jury if they are supported by the pleadings and substantial evidence in the record.'" (citation omitted)); *State v. Hartsfield*, 681 N.W.2d 626, 633 (Iowa 2004) (concluding there was substantial evidence to support the instruction and the district court erred in failing to give the requested instruction). Thus, while the most recent precedents state the standard of review is for an abuse of discretion, the practice is review for legal error.

The divergence between theory and practice is highlighted in this case. The majority, following the most recent precedents, states it reviews the district court's refusal to give Marriott's requested instruction on the continuing storm doctrine for an abuse of discretion. The majority then examines the evidence in the light most favorable to Marriott and concludes the evidence was sufficient to submit the instruction to the jury. The majority also concludes the refusal to give the requested instruction was prejudicial to Marriott and requires reversal. Wholly lacking from the majority's discussion is any statement or other indication the district court's declination of the requested instruction was "based on a ground or reason that [was] clearly untenable" or based on discretion "exercised to a clearly unreasonable degree." *Pexa*, 686 N.W.2d at 160. Instead, the majority simply disagrees with the district court's decision and reverses it. This is merely de facto application of the legal error standard.

The tension in our precedents is also demonstrated by the different standards of review applied to the district court's refusal to give a requested instruction and the district court's decision to give an instruction. Our most recent precedents state that abuse of discretion applies to the refusal to give an instruction "because the decision involves an assessment of the evidence in the case." *Guerrero Cordero*, 861 N.W.2d at 258. The distinction does not hold up. The *process* of deciding whether or not to give a requested instruction always involves an assessment of the evidence in the case. The *conclusion* that a requested instruction should be given or refused based on the state of the evidence does not change the *process* by which the decision was made. Whatever conclusion is reached, the district court must make "an assessment of the evidence in the case" to determine whether the requested instruction "has application to the case."

For over 150 years, our courts have reviewed issues related to jury instructions for correction of legal error. *See, e.g.*, *Tyron v. Oxley*, 3 Greene 289, 290-91 (Iowa 1851). *Piper* created unnecessary confusion in the standard of review. If writing on a clean slate, I would adhere to the older line of authority holding that we review issues related to jury instructions, including the decision to give or refuse an instruction, for correction of legal error.

Turning to the merits of the argument, I conclude the district court did not abuse its discretion or commit legal error by refusing Marriott's requested instruction.

> The continuing storm doctrine holds the failure to remove the
> natural accumulation of snow and ice prior to the cessation of the

weather event giving rise to such accumulation of snow and ice is not a breach of the duty of ordinary care, as a matter of law, and is thus not negligent, as a matter of law. *See Cranshaw v. Cumberland Farms, Inc.*, 613 F. Supp. 2d 147, 149 (D. Mass. 2009) (stating "a property owner is generally not liable for injuries caused by the natural accumulation of snow or ice"). The doctrine further holds that the failure to clear the natural accumulation of snow and ice prior to the cessation of the weather giving rise to such accumulation is not a breach of the duty of ordinary care even where the party voluntarily has undertaken snow removal efforts prior to the end of the weather event. *See id.* at 149 ("Nor does liability arise merely because a property owner removes a portion of snow or ice but fails to remove or treat the remaining natural accumulation."); *Avalos v. Pulte Home Corp.*, 474 F. Supp. 2d 961, 970 (N.D. Ill. 2007) (stating that "simply removing snow leaving a natural ice formation underneath does not constitute negligence"); *Wheeler v. Grande'vie Sr. Living Cmty.*, 819 N.Y.S.2d 188, 189 (2006) ("[T]he mere failure to remove all snow and ice from a sidewalk or parking lot does not constitute negligence and does not constitute creation of a hazard.").

While the continuing storm doctrine holds there is no breach of duty for failing to clear the natural accumulation of snow until a reasonable time after the cessation of the weather event, "liability may result if the efforts [the party] did take created a hazardous condition or exacerbated the natural hazards created by the storm." *Id.* at 188. This is consistent with the general rule that an actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm. *See Thompson v. Kaczinski*, 774 N.W.2d 829, 835 (Iowa 2009) (adopting Restatement (Third) of Torts § 7(a) that an "actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm"); *see also Van Fossen v. MidAm. Energy Co.*, 777 N.W.2d 689, 696 (Iowa 2009) (recognizing adoption of Restatement (Third) of Torts § 7(a)); *Hill v. Damm*, 804 N.W.2d 95, 99 (Iowa Ct. App. 2011) (quoting Restatement (Third) of Torts § 3 and stating a person "acts negligently if the person does not exercise reasonable care under all the circumstances"); *see generally Avalos*, 474 F. Supp. 2d at 970 ("[A] landowner does not have a duty to remove natural accumulations of snow and ice, but the landowner who voluntarily removes snow or ice negligently may be subject to liability.").

*Wailes v. Hy-Vee, Inc.*, 861 N.W.2d 262, 266-67 (Iowa Ct. App. 2014).

The rationale underlying the doctrine is that the party responsible for maintaining the premises at issue should have a reasonable period of time following the cessation of the weather event to ameliorate the hazards caused by the weather event because any prior action would be impractical or ineffective. *See Cotter v. Brookhaven Mem. Hosp. Med. Ctr., Inc.*, 947 N.Y.S.2d 608, 608 (N.Y. App. Div. 2012); *Powell v. MLG Hillside Assocs.,* 737 N.Y.S.2d 27, 28 (N.Y. App. Div. 2002) ("The rule is designed to relieve the worker(s) of any obligation to shovel snow while continuing precipitation or high winds are simply re-covering the walkways as fast as they are cleaned, thus rendering the effort fruitless."). There is no hard demarcation between the severity of a weather event sufficient to support an instruction and the severity of a weather event insufficient to support an instruction. *See Rochford v. G.K. Dev., Inc.*, 845 N.W.2d 715, 718 (Iowa Ct. App. 2014) (stating "there is no Iowa case law that addresses how severe or significant the weather event has to be to qualify as a storm"). There is also no specific delineation of what constitutes a reasonable time following the cessation of a weather event by which ameliorative efforts are required. *See Powell*, 737 N.Y.S.2d at 29 ("Once there is a period of inactivity after cessation of the storm, it becomes a question of fact as to whether the delay in commencing the cleanup was reasonable."). We thus only know the outer edges of the issue—the easy cases where it is clear the instruction is warranted or not warranted. As to all of the other cases in the middle, given the rationale of the rule, the district court must make a common sense determination as to whether the evidence shows there was an ongoing weather event of sufficient severity

that would have made prior ameliorative efforts to remove the natural accumulation of ice or snow impractical or ineffective. *See Cheung v. N.Y. Transit Auth.*, 964 N.Y.S.2d 596, 597 (N.Y. App. Div. 2013) ("If the storm has passed and precipitation has tailed off to such an extent that there is no longer any appreciable accumulation, then the rationale for continued delay abates, and commonsense would dictate that the rule not be applied." (internal quotation marks omitted)).

I submit this is one of the easy cases where the instruction is not warranted. The majority relies on a weather forecast for a wide geographic area for the two-day period surrounding the accident at issue. A forecast: "Dewey Defeats Truman." The evidence is largely immaterial to the issue. First, it is a forecast of expected events; it is not evidence of actual events. *See Grant v. Wakeda Campground, LLC*, 631 F. Supp. 2d 120, 128 (D.N.H. 2009) (stating "weather forecasts are often wrong"); *Lyman v. Town of Cornwall*, 318 A.2d 129, 130 (Conn. Ct. App. 1973) (holding forecasts "could not be introduced as evidence of the weather on the days in question" and the district court committed reversible error in allowing such evidence to establish actual weather conditions); *Hearst Magazines, Div. of Hearst Corp. v. Cuneo E. Press, Inc.*, 296 F. Supp. 1202, 1204 (E.D. Pa. 1969) (noting forecasts were admissible to establish notice, "not to show the accuracy of the reports"). Second, this particular forecast encompasses a broad geographical area. For example, the report encompasses both Clinton and Bettendorf, which are 45 miles apart. The geographic breadth of the forecast precludes any reasonable inference regarding the weather

conditions at the premises at issue. Third, the temporal scope of the forecast is for a two-day period; it is not probative of the weather conditions at the premises at issue during or near the time of the accident. *See Powell*, 737 N.Y.S.2d at 29 ("In applying this rule in derogation of liability, we should be less concerned with what was happening at the very moment of the accident. More relevant is what was happening during the period immediately preceding the accident.").

The relevant evidence is the climatological data reporting the actual weather conditions in the area at or near the time of the accident. I respectfully disagree with the majority's interpretation of the climatological data. The climatological data from Quad City International Airport shows no weather event sufficient to support the instruction. That report has an hour-by-hour observation table. Between midnight and the time of the accident, approximately 8:00 a.m., the weather type is identified as "mist." Marriott repeatedly characterizes this as "freezing mist." The evidence does not support that characterization. The temperature never dipped below freezing on the morning of the accident. There was no recorded precipitation on the morning of the accident. Indeed, there was no measurable amount of precipitation at all on the day of the accident. The climatological data from Davenport Municipal Airport showed only a trace amount of precipitation for the entire day. Ultimately, two different climatological centers showed there was no measurable precipitation on the day of the accident. It is clear from these reports and the testimony that whatever weather event may have occurred *on the day before* Alcala's slip and fall surceased long before the time of her accident.

The fact that all measurable precipitation had ended the day before Alcala's slip and fall makes this case readily distinguishable from the cases on which Marriott relies. In *Amos v. NationsBank, N.A.*, 504 S.E.2d 365, 368 (Va. 1998), the court held the premises owner had no duty to clear ice from a sidewalk where there was evidence the weather event was occurring at the time of the plaintiff's fall. Specifically, the plaintiff testified there was a "light drizzle" and the meteorologist confirmed freezing rain fell in the area for more than one hour after the plaintiff's accident. *Amos*, 504 S.E.2d at 349. Likewise, in *Rochford*, the evidence showed there was freezing rain at the time of the fall that continued for six hours afterward. 845 N.W.2d at 718. In *Schleifman v. Prime Hospital Corporation*, 668 N.Y.S.2d 258, 259 (N.Y. App. Div. 1998), the evidence showed freezing rain was falling at the time of the accident. In this case, the district court's post-trial ruling made very clear that there simply was no evidence supporting the requested instruction:

> Defendant relies on Defendants' Exhibit M, a collection of tables of climatological data as reported by the National Oceanic and Atmospheric Administration from the Quad City International Airport in Moline, Illinois approximately 9.2 miles from the area of Plaintiff's fall. The climatological data from the day before Plaintiff's fall and the day of Plaintiff's fall reveals the following: (1) no precipitation fell on the day of Plaintiff's fall; (2) the last recorded trace amount of precipitation fell approximately 13 hours before Plaintiff's fall; (3) the last recorded amount of measurable precipitation (.15 inches) fell approximately 17 hours before Plaintiff's fall; (4) for most of the day before Plaintiff's fall until 4 hours after Plaintiff's fall, the climatological data indicated the presence of moderate mist, which is listed in the provided table of weather notations under "obscuration" and not under "precipitation"; (5) in the 18 hours before Plaintiff's fall, the actual air temperature ranged from 32-34 degrees; and (6) for 3 hours before and after Plaintiff's fall, wind speeds were 15-20 miles per hour.

Given the actual weather conditions at the time of the accident, the majority's decision ignores the purpose of the doctrine. Ice and snow are part and parcel of Iowa winter. The purpose of the doctrine is to relieve one responsible for clearing the natural accumulation of ice and snow from the premises from the burden of acting when the weather makes ameliorative efforts impractical or ineffective. There is no evidence that weather conditions at the time of the accident or even a reasonable period of time before the accident made ameliorative efforts impractical or ineffective. The purpose of the doctrine is not to provide a shield for liability whenever there is a forecast of inclement weather but no evidence of actual weather that made ameliorative efforts impractical or ineffective during the relevant time period. Application of the doctrine here transforms the "continuing storm doctrine" into the "storm that ended yesterday doctrine." The cases do not go that far.

For the foregoing reasons, I respectfully concur in part and dissent in part.