# IN THE COURT OF APPEALS OF IOWA

No. 22-0653
Filed March 8, 2023

**WYNEIL HILL,**
 Plaintiff-Appellee,

vs.

**STATE OF IOWA, IOWA DEPARTMENT OF HUMAN SERVICES, and GLENWOOD RESOURCE CENTER,**
 Defendants-Appellants.
_____

 Appeal from the Iowa District Court for Mills County, Richard H. Davidson,

Judge.


 The defendants appeal an adverse jury verdict, raising alleged evidentiary

errors by the district court. **AFFIRMED.**


 Brenna Bird, Attorney General, and Chandlor G. Collins (until withdrawal)

and Robert J. Thole, Assistant Attorneys General, for appellants.

 Gregory G. Barntsen and Joseph D. Thornton of Smith, Peterson Law Firm,

LLP, Council Bluffs, for appellee.


 Heard by Bower, C.J., and Badding and Buller, JJ.

**BADDING, Judge.**

Glenwood Resource Center,[1] a facility for Iowans with intellectual disabilities and mental illnesses, appeals a jury verdict in favor of its former employee, Wyneil Hill, on his claims of disability discrimination and constructive discharge. Glenwood claims the district court abused its discretion in several pretrial evidentiary rulings on the parties' motions in limine. On the claims where error was properly preserved for our review, we find no abuse of discretion and affirm the judgment for Hill.

## I. Background Facts

Hill is an army veteran who suffers from post-traumatic stress disorder as a result of seeing his sergeant get shot in the stomach on a mission in the late 1980s. Decades later, while employed at Glenwood as a resident treatment worker, Hill was caring for a resident with a colostomy when his disorder was triggered. In an email to his supervisor after the incident on August 3, 2019, Hill wrote that seeing the resident's intestines through his stoma caused him to have "flashbacks of fellow soldiers being wounded in battle. Being close to those who have open organ areas is bad for me. I had no clue that I would see clients like this or I could have mentioned it specifically."

Glenwood referred Hill to a therapist, and he remained off work through August 13 when he met with his human resources manager, Natalie McEwen, and a shift administrator to discuss his return to work. Hill went to the meeting in hopes

---

[1] Because Glenwood is a facility operated by the Iowa Department of Human Services, now known as the Iowa Department of Health and Human Services, the plaintiff also named the State of Iowa and the department as defendants in his suit. We will refer to all the defendants collectively as "Glenwood."

that he could go back to work the next day in an area where he would not have to care for residents with colostomies. Despite this request, McEwen did not give Hill a letter that she had drafted on August 12 temporarily reassigning him to a kitchen staff position. She instead told him that Glenwood could not "100 percent guarantee that he was never going to see the things that triggered him," even though there were only three to four residents—out of the 100 or so there at the time—who had colostomies. Feeling that he had no other option, Hill resigned. Although McEwen told him that he "could resign without prejudice," she marked his separation form as not eligible for rehire.

After leaving his job at Glenwood, Hill could not find other employment. He sued Glenwood in November 2020 for disability discrimination and constructive discharge, alleging he was not provided with reasonable accommodations for his disability of post-traumatic stress disorder, which forced him to resign. The jury returned a verdict for Hill on both claims, awarding him $142,500 in lost earnings and $150,000 in non-economic damages.

Glenwood appeals, claiming the district court abused its discretion in: (1) admitting the August 12, 2019 letter temporarily reassigning Hill to a kitchen staff position; (2) prohibiting Glenwood from providing context for the letter and explaining why it was not provided to Hill at the meeting on August 13; (3) excluding evidence about Hill's "criminal history, drug addiction, therapy records, and other items included in his employment background checks"; and (4) admitting evidence about the training, or lack thereof, that Hill received for his position at Glenwood.

## II.     Error Preservation

Most of Glenwood's brief focuses on the admission of the August 12, 2019 letter into evidence.  It argues that Hill used this letter "to show an accommodated position was available and used [Glenwood's] failure to provide the letter to him at the August 13th meeting as proof [Glenwood was] not interested in working with him to find an accommodation."  *See Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 16–18 (Iowa 2014) (discussing the elements of a reasonable-accommodation claim).  The problem, according to Glenwood, is that Hill was being reassigned to food and nutrition services because of an investigation into his workplace behavior and Hill's claim that he was subjected to racial slurs, not to accommodate his post-traumatic stress disorder.  As a result, Glenwood claims the letter "was not relevant to any claim or defense in this trial."  Glenwood also claims that once the letter was admitted, the district court should have allowed it to explain "why the letter was drafted, i.e., the ongoing investigations."

We cannot address these claims because Glenwood has not provided us with "a sufficient record disclosing the error upon which it relies."[2]  *Estes v. Progressive Classic Ins. Co.*, 809 N.W.2d 111, 115 (Iowa 2012).  Glenwood's motion in limine did not seek to exclude the August 12, 2019 temporary reassignment letter, though it did ask that Hill be prohibited from offering evidence

---

[2] Nor did Glenwood provide us with statements in its appellate brief identifying how and where error was preserved for any of the issues it raised on appeal.  *See* Iowa R. App. P. 6.903(2)(g)(1) (requiring the argument section of appellate briefs to include a "statement addressing how the issue was preserved for appellate review, with references to the places in the record where the issue was raised and decided").  While a "party's disregard of the rules may lead to summary disposition of the appeal or waiver of an issue," we decline Hill's invitation to apply that result here.  *See State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013).

about Glenwood's investigation into his workplace behavior and coworkers' racial slurs. The district court granted that portion of Glenwood's motion, ruling at a pretrial conference: "I'd like to make this as clean as possible and keep it a disability case and constructive discharge, period." So the parties were instructed that they could not offer evidence about "Hill's behavior or coworkers' behavior, as well as the racial slur" allegations.

To comply with the court's ruling, the parties had to remove and redact some of their proposed exhibits before trial. At the end of the pretrial conference, the court told counsel to contact him if they had any disagreements while completing that task. They apparently did so, as the court noted on the record before jury selection on the first day of trial:

> The court held another pretrial conference, one much briefer and was not on the record via telephone. And as part of that pretrial conference over the telephone on March 3rd, the court was appraised that the impasse involved Plaintiff's Exhibit 17 and a similar Exhibit FF of defendant's [the August 12, 2019 temporary reassignment letter]. The court ruled that this exhibit was admissible.

When Hill offered the letter at trial, Glenwood responded: "We would just object in line with a prior ruling by the Court." Trouble is, we don't know what objection Glenwood made to the letter at the unreported hearing or the basis for the court's ruling. *See In re F.W.S.*, 698 N.W.2d 134, 135 (Iowa 2005) ("The court may not speculate as to what took place or predicate error on such speculation."). Without that information, or any indication from the record that Glenwood asked to provide context for the letter, we cannot address its first two claims on appeal. *See id.* ("It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon."); *see also* Iowa R. App. P. 6.806(1) ("A statement of

the proceedings may be prepared to create a record of a hearing or trial for which a transcript is unavailable if a party deems it necessary to complete the record on appeal."); *Jones v. Glenwood Golf Corp.*, 956 N.W.2d 138, 143 n.1 (Iowa 2021) ("A record can be made of off-the-record colloquies.").

## III.    Merits

We begin our analysis of Glenwood's remaining two claims with some basic principles of evidence: "Relevant evidence is admissible, unless provided otherwise.  However, irrelevant evidence is not admissible.  Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." *Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 17 (Iowa 2019) (cleaned up) (quoting Iowa Rs. Evid. 5.401, .402) .  But even relevant evidence "is not admissible 'if its probative value is substantially outweighed by the danger of unfair prejudice.'"  *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000) (quoting Iowa R. Evid. 5.403).  The determination of relevancy, and application of the balancing test in Iowa Rule of Evidence 5.403, rests within the sound discretion of the district court.  *Id.*; *see Harris v. Jones*, 471 N.W.2d 818, 821 (Iowa 1991). We will only find an abuse of that discretion if it was exercised "on grounds or for reasons clearly untenable or to an extent clearly unreasonable."  *Mohammed v. Otoadese*, 738 N.W.2d 628, 631–32 (Iowa 2007) (citation omitted).

### A.    Background-check evidence

Glenwood claims the district court abused its discretion in excluding evidence that would have appeared on Hill's background checks for employment, including an "assault conviction from 2014," delinquent child-support payments,

"drug history," "investigations into [Hill] abusing his stepdaughter," "criminal history," and "therapy records," plus Hill's "background and record check evaluation" at Glenwood.[3]  It argues "these items were relevant with respect to [Hill's] claim for damages, specifically because the types of jobs he was applying for, those in criminal justice and as a contracted driver (Uber/Lyft), perform background checks and would disqualify and did disqualify him for employment." With this evidence being excluded from trial, Glenwood argues Hill was able to testify that the reason he remained unemployed was because Glenwood marked his separation form as ineligible for rehire.

To put this claim into context, Hill testified at trial that after leaving his job at Glenwood in August 2019, he had been unable to find other employment despite "filing several other applications over the course of the last three years."  Because Hill had a master's degree in criminal justice, he was mainly looking for jobs in the criminal-justice field.  When he did not succeed with those jobs, he expanded his search into sales and driving services like Lyft, Uber, and Door Dash.  Hill testified

---

[3] Although the parties held a lengthy hearing on their motions in limine, Glenwood did not make any offer of proof on the evidence the court excluded or ask that its proposed exhibits be made part of the record.  *See Lynch v. Moreno*, No. 21-0815, 2022 WL 1486185, at *4 n.6 (Iowa Ct. App. May 11, 2022) ("[T]he record that makes its way to us does *not* include proposed exhibits that are never marked as admitted by the district court in the judicial interface.").  Glenwood has nevertheless included some of its proposed exhibits in the appendix.  As we cautioned in *Lynch*, "[p]ractitioners should refrain from citing items that were not admitted and including them in the appendix, as they were not made a part of the district court record and are therefore not part of the record on appeal."  *Id.*  Because Glenwood's proposed exhibits are not properly before us, we have not considered them in reviewing this claim.  Our review is instead confined to the descriptions of the excluded evidence in the parties' motions in limine and at the hearing on those motions, to the extent those descriptions are sufficient to provide us with a "meaningful record for appellate review."  *Brooks v. Holtz*, 661 N.W.2d 526, 529 (Iowa 2003) (citation omitted).

at his deposition that he thought his applications to those driving services were denied because of a 2014 misdemeanor assault conviction. But at trial, he speculated that his difficulty finding a job may have been because Glenwood listed him as not eligible for rehire, though he also testified background checks were performed.

The threshold problem Glenwood faces with the excluded evidence about Hill's "criminal history, drug addiction, therapy records, and other items included in his employment background checks" is that we don't know whether the employers Hill filed applications with performed background checks. If checks were performed, we also don't know what information was disclosed, whether that information included the items Glenwood wanted to get into at trial, or whether any of it was the reason Hill was not hired. *Cf. Parker v. Shatek*, No. 15-1287, 2016 WL 4801605, at *1 (Iowa Ct. App. Sept. 14, 2016) (finding evidence of deceased plaintiff's criminal history was relevant on damages where an expert acknowledged criminal history could affect employability).

The only information Glenwood offered on this point at the motion in limine hearing was defense counsel's assertion that Hill

> testified in deposition that Lyft and Uber had not hired him based on his background check. And so we believe that—we're happy to introduce evidence or attempt to introduce evidence from Lyft and Uber explaining their background checks, but those at least publicly mention assaultive or violent offenses will not allow you to be hired by those places.
> Additionally, those offenses, typically—especially with the one within the last ten years—will not allow you to work in a criminal justice capacity, even if it's a misdemeanor for assault.

Later in the hearing, defense counsel continued: "[T]he jobs that Mr. Hill was applying for are going to require background checks, drug testing and sometimes

polygraphs, and I can pull that at least from the applications I looked up in research to this case." Counsel also told the court based on his "personal experience, *not in evidence*" that an applicant's child support delinquency would appear on a background check for "probation offices, correctional offices." (Emphasis added.) At a subsequent hearing on the issue, the district court noted that it asked counsel off the record whether Glenwood had "evidence that criminal justice jobs require clean criminal history." In response, Glenwood gave the court a one-page exhibit the court described as "a screen shot of probably a text that Mr. Hill received" from Lyft that his job application was denied "based in whole or in part on information in your background check."

But, as the district court noted, that exhibit "doesn't say anything else, so I don't know if they have specific[s] as to what [was] in the background check." Glenwood did not offer the court any other evidence aside from the above to support its assertions about the background checks. *See State v. Embree*, No. 14-0709, 2015 WL 9450466, at *7 (Iowa Ct. App. Dec. 23, 2015) (finding defense counsel's statement that he had the victim's iPod and an exhibit with "approximately 50 statements from [the victim's] phone" was not "sufficient to create a meaningful record for appellate review" where the record did not show what was contained on the iPod and the exhibit was not part of the record). So we are left to speculate about the content of Glenwood's proposed evidence on the background checks and the witness or witnesses it would present to offer the evidence. *See id.* Without that necessary link, the relevancy of these items of evidence is marginal, especially considering that Hill was hired at Glenwood after a background check. *See Parker*, 2016 WL 4801605, at *1 ("Relevance is

contextual; it is determined by the issues raised and other evidence introduced analyzed within the framework of the applicable law.").

The probative value of the evidence is also limited. *See State v. Rodriguez*, 636 N.W.2d 234, 240 (Iowa 2001) ("Probative value gauges the strength and force of the evidence to make a consequential fact more or less probable." (cleaned up)). As the district court observed, most of the evidence that Glenwood wanted to get into about Hill's background was too remote in time to be probative. *See State v. Sharkey*, 311 N.W.2d 68, 70 (Iowa 1981) ("Although evidence may itself appear relevant, it may relate to a time so remote from the date of the happening of an incident that it has little probative value."). This includes a 1999 charge for second-degree assault, a child support delinquency in 2004, and a 2000 charge for third-degree assault reduced to disturbing the peace,[4] along with statements in a psychosocial assessment that he struggled with a methamphetamine addiction before 2011. The unfairly prejudicial nature of this evidence was also high. *See, e.g.*, *Shawhan v. Polk Cnty.*, 420 N.W.2d 808, 810 (Iowa 1988) (noting the potential that evidence of past drug use "has for causing unfair prejudice is high").

As for the unspecified "therapy records" Glenwood contends should have come into evidence, Hill's motion in limine sought to keep out counseling progress notes from 2014 that discussed some times when he struggled with anger issues. Glenwood agreed at the hearing on the motions in limine that evidence from those

---

[4] Hill disclosed these offenses to Glenwood in a record check evaluation that Glenwood listed as a proposed exhibit for trial. But, as discussed earlier, because that exhibit was not made part of the record, we are limited to counsel's descriptions of the offenses in Hill's motion in limine and the hearing on the motion.

progress notes would only be relevant if the court denied its request to exclude evidence about its investigation into Hill's workplace behavior and his coworkers' racial slurs. Because that evidence did not come in, and Glenwood made no showing as to how the progress notes would explain why Hill could not find a job after leaving Glenwood, we find no abuse of discretion in the court's ruling excluding those records.

We also find no abuse of discretion in its exclusion of evidence about Hill's alleged abuse of his stepdaughter at some unknown time, which the parties told the court was "unfounded." Glenwood intended to use this evidence to explain why Hill could not be placed in one of the all-female houses at the facility. But, as the district court reasoned, the substantial unfairly prejudicial nature of this evidence outweighed any limited probative value considering there was no criminal conviction, it "involves at best [an] abuse investigation [that] was unfounded," and is "based on hearsay." In any event, Hill's supervisor testified at trial that his request to be transferred to the all-female house was denied because of her "concerns about his interactions and his judgment with females." And Hill presented evidence there were many other houses at Glenwood with vacancies for resident treatment workers.

For these reasons, we conclude the district court did not abuse its discretion in excluding any of the foregoing evidence.

**B. Training evidence**

Glenwood next claims the district court abused its discretion in allowing testimony that Hill had not been trained to deal with residents who had colostomies. Glenwood argues this evidence was irrelevant and unfairly

prejudicial because Hill was not seeking recovery for his lack of training or the emotional distress he experienced as a result of seeing the resident's stoma. *Cf. Couch v. Iowa Dep't of Hum. Servs.*, No. 15-0432, 2016 WL 5930340, at * 5 (Iowa Ct. App. Oct. 12, 2016) (discussing a failure-to-train claim in a discrimination case). But it was relevant to Hill's disability discrimination claim for Glenwood's failure to provide a reasonable accommodation.

The jury was instructed that in order to be successful on that claim, one of the elements Hill had to prove was that he "was qualified to perform the essential functions of his job position with or without accommodation." *See Rumsey v. Woodgrain Millwork, Inc.*, 962 N.W.2d 9, 22 (Iowa 2021). To show he was a qualified individual, another instruction required Hill to prove that he "possess[ed] the requisite skill, education, experience, *and training* for the position he was hired to perform." *See id.* We agree with the district court the evidence was relevant on that element of Hill's claim—"to determine what he could tolerate as far as his qualifications for the job."

Testimony about Hill's lack of training on colostomy bags was also relevant to show this was not an essential function of his job. On that issue, the jury was instructed that one of the factors it could consider was "the amount of time spent on the job performing the function in question." *See Palmer Coll. of Chiropractic v. Davenport Civ. Rts. Comm'n*, 850 N.W.2d 326, 343 (Iowa 2014). As the district court found, the fact that Hill "worked with the resource center for some four, maybe more months before he ran into this issue" was relevant to show that working with residents who had colostomies was not an essential function of his job.

As far as the rule 5.403 balancing test, we recognize that all evidence will result in some prejudice. *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 158 (Iowa 2004). We accordingly focus on whether that prejudice is unfair. *Id.* "Unfair prejudice arises when the evidence prompts the jury to make a decision on an improper basis, often an emotional one." *Id.* On this point, Glenwood argues the evidence "created animosity towards" it and "confused [the jury] as to what evidence they should consider." We disagree. While Hill's lack of training was discussed throughout the trial, it was used by him for the purposes identified above, not to try to get the jury to "punish [Glenwood] for unrelated events." On balance, we find the district court fairly weighed the probative value of the evidence against the probable dangers of admitting it. *See Midwest Home Distrib., Inc. v. Domco Indus. Ltd.,* 585 N.W.2d 735, 745 (Iowa 1998) ("Because [rule 5.403] allows the district court to exclude relevant testimony, the court should apply the rule sparingly.").

Considering the "latitude afforded the district court in matters of evidence," *State v. Thompson*, 954 N.W.2d 402, 408 (Iowa 2021), we conclude the court did not abuse its discretion in allowing testimony about Hill's lack of training.

## IV. Conclusion

We find Glenwood failed to preserve error on two of its evidentiary claims. On the claims where error was preserved, we find no abuse of discretion in the district court's evidentiary rulings and affirm the judgment for Hill.

**AFFIRMED.**